Sharron K. RICHARDSON and Timothy Charles Richardson, minors, by and through their parents and best friends, Charles Richardson and Neta Sue Richardson, Individually, Plaintiffs,

v.

ALLSTATE INSURANCE CO., an Illinois Corporation, Defendant.

No. 55465.

Supreme Court of Oklahoma.

Oct. 21, 1980.

Arthur S. Bay, Bay, Hamilton, Lees, Spears & Verity, Oklahoma City, for plaintiffs.

Rex K. Travis, Benefield, Travis, Russell & Freede, Oklahoma City, for defendant.

IRWIN, Vice Chief Justice.

The United States District Court for the Western District of Oklahoma certified the following question pursuant to the Uniform Certification of Questions of Law Act, 20

---

O.S.Supp.1979, § 1601 et seq.: May uninsured motorist insurance coverage of $25,000.00 for each person injured in an accident, not to exceed $50,000.00 in any one accident, provided by a single automobile liability insurance policy covering three vehicles, be "stacked" or aggregated to provide limits of $75,000.00 and $150,000.00 respectively?

Allstate Insurance Company (Allstate) issued an automobile insurance policy to Charles Richardson which was in full force and effect on February 16, 1979. On that date, Richardson, his wife, and their two minor children, were occupants of one of the three vehicles insured under the policy. The Richardson vehicle was involved in a collision with a vehicle operated by one Larry A. Ledgerwood. The accident was caused by negligence on the part of Ledgerwood.

The Richardsons sustained aggregate damages equal to or exceeding $150,000.00. Ledgerwood was insured by a liability insurance policy providing limits for bodily injury to any one person in the amount of $5,000.00 and for bodily injury to all persons injured in one accident in the amount of $10,000.00. Allstate paid Richardsons $40,000.00 representing its $50,000.00 single vehicle limit less the $10,000.00 covered by Ledgerwood's policy.

According to the policy, Mr. Richardson paid a total premium of $225.50, itemized as follows:

| Coverage Description | 73-Fury | 77-Chev. | 73-Camaro |
|---|---|---|---|
| AA & BB Bodily Injury & Property Damage Liab. | $42.00 | $37.00 | $41.00 |
| SS Uninsured Motorists | $ 4.50 | $ 4.50 | $ 4.50 |
| CC Auto Medical Payments | $ 5.00 | $ 5.00 | $ 5.00 |
| DD Auto Collision | | $26.00 | $21.00 |
| HH Auto Comprehensive | | $18.00 | $12.00 |
| Totals for each Vehicle Account | $51.50 | $90.50 | $83.50 |

1. 36 O.S.Supp. 1979, § 3636 provides in part:
   "(A) No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a *motor vehicle shall be issued, delivered*, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection (B) of this section."

| Good Driver Rate | | | |
|---|---|---|---|
| Applied | Yes | Yes | Yes |
| Multiple Car Discount | Yes | Yes | Yes |

The three vehicles were listed as vehicle No. 1, 2 & 3, and the typed in portion of the policy reads:

| | | |
|---|---|---|
| | AA Bodily Injury Liability | |
| 1 2 3 | $25,000 each person – $50,000 each occurrence | |
| | BB Property Damage Liability | |
| 1 2 3 | $25,000 each occurrence | |
| | SS Uninsured Motorists Bodily Injury | |
| 1 2 3 | $25,000 each person – $50,000 each accident | |
| | CC Automobile Medical Payments | |
| 1 2 3 | $2,000 each person | |
| 2 3 | DD Automobile Collision | – Actual Cash Value |
| 2 3 | Less Deductible of | $100.00 each occurrence |
| 2 3 | HH Automobile Comprehensive – Actual Cash Value | |

It is clear that had Allstate issued three separate policies to Richardson to insure the above described vehicles, instead of a single multivehicle policy, the question of stacking uninsured motorist insurance coverage would be determined by our decision in *Keel v. MFA Insurance Company*, Okl., 553 P.2d 153 (1976). In that case Keel was injured by an uninsured motorist. As Keel's insurer, MFA had issued two separate liability insurance policies containing uninsured motorist endorsements, each of which had liability limits of $10,000.00 if the accident involved only one person. Keel brought an action against MFA to enforce its alleged liability under the two uninsured motorist endorsements and received a judgment of $11,500.00. MFA challenged the "stacking" of coverage on the basis of an "other insurance" clause contained in the policies, which purported to limit the insured's coverage to the greatest applicable sum recoverable under any one policy.

We held the "other insurance" clauses involved in *Keel* to be contrary to public policy, repugnant to our uninsured motorist statute,[1] and void for the following reasons:

"(B) The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons injured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit–and–run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting

"(1) The uninsured motorist statute requires that each liability policy must provide uninsured motorist coverage, unless the insured rejects it in writing.

(2) The statute provides for a minimum for uninsured motorist coverage, but allows the insured to purchase additional coverage if desired.

(3) The appellee [Keel] has paid, and the appellant [MFA] collected, separate premiums for each uninsured motorist coverage."

The Richardsons contend that the rationale of *Keel* is applicable in the present case because:

(1) The uninsured motorist statute requires that the minimum statutorily required amounts of uninsured motorist insurance coverage must be provided each vehicle listed in the policy.

(2) The separate premiums paid on a second and subsequent vehicles provide additional (coextensive in scope) uninsured motorist coverage.

(3) It would be manifestly unjust to permit the insurer to void its statutorily imposed liability by its assertion of "limits of liability" clauses which would deny the insured that for which he has paid a premium.

Allstate argues that the uninsured motorist statute requires only that each policy provide uninsured motorist coverage and does not require coverage as to each vehicle. It also contends that, as to the additional premiums charged for the second and subsequent vehicles,[2] the consideration for the second and subsequent premiums is the increased risk of insuring the additional vehicles together with passengers in those vehicles.

The question here is not whether the statute requires per policy or per vehicle coverage or whether Allstate could have limited its liability to $50,000.00 for a single accident, but what was the Richardsons' insurance coverage under the policy when considered in connection with our uninsured motorist statute. Richardson, his wife, and two minor children were insureds under it and would have had uninsured motorist coverage even while in a vehicle other than an insured vehicle covered by the policy. *Cothren v. Emcasco Insurance Company*, Okl., 555 P.2d 1037 (1976). This broad coverage, unrelated to specific vehicles, comports with the policy of indemnification underlying § 3636.

The courts are divided on whether stacking of uninsured motorist coverage will be allowed in a single multivehicle policy. Some of the decisions not allowing such stacking include *Castle v. United Pacific Insurance Group*, 252 Or. 44, 448 P.2d 357 (1970); *American Liberty Insurance Company v. Ranzau*, 481 S.W.2d 793 (Tex.1972); *Westchester Fire Insurance Company v. Tucker*, 512 S.W.2d 679 (Tex.1974). Some of the cases which allow stacking are *Federated American Ins. Co. v. Raynes*, 88 Wash.2d 439, 563 P.2d 815, 820 (1977) and *Chaffee v. U. S. Fid. & Guar. Co.*, 591 P.2d 1102 (Mont.1979); *Curran v. Fireman's Fund Insurance Co.*, 393 F.Supp. 712 (D. Alaska, 1975).

In *Federated American Ins. Co. v. Raynes, supra*, the Supreme Court of Washington, citing several cases allowing stacking, said:

the requirements of Section 7–204 of Title 47, Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured."

**2.** Richardsons' policy indicates that an equal charge was made for uninsured motorist coverage as to each of the three vehicles listed. The policy also indicates that a "multi–car discount" was given the Richardsons in comput-

ing the total premium, and Allstate urges that this discount be considered in determining the scope of coverage provided by the second and third premiums. However, the parties specifically refrained from including in the facts provided us any stipulation with regard to the purpose of the "multi–car discount," and there is nothing before us to show that the discount was given as a quid pro quo for a limitation on uninsured motorist coverage. See *Fletcher v. Aetna Cas. & Sur. Co.*, 80 Mich.App. 439, 264 N.W.2d 19 (1978).

"We need not rule on whether the separability provision requires the combining of uninsured motorist coverages [because of ambiguity, resolved in insured's favor, arising from that provision considered with the limits–of–liability provision], for we believe the limits–of–liability provision conflicts with the statutory policy of providing uninsured motorist coverage.

Respondent paid two premiums for uninsured motorist coverage and is entitled to the full protection which he has purchased. The form of protection should not control the limits of FAI's liability. If respondent had insured his two cars under two separate policies with FAI and paid uninsured motorist premiums for each car, he would be entitled to $30,000 in uninsured motorist coverage from FAI. *See Cammel v. State Farm Mut. Auto. Ins. Co.*, 86 Wash.2d 264, 543 P.2d 634 (1975). We do not believe the result should be different simply because his two cars are insured under one single policy. In either case, he has paid two premiums for uninsured motorist coverage and is entitled to $30,000 in coverage. *See Tucker v. Government Employees Ins. Co.*, 288 So.2d 238 (Fla.1973); *Sturdy v. Allied Mut. Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969); *Citizens Mut. Ins. Co. v. Turner*, 53 Mich.App. 616, 220 N.W.2d 203 (1974), and *Cunningham v. Insurance Co. of North America*, 213 Va. 72, 189 S.E.2d 832 (1972).

There is an additional reason for our ruling that the number of uninsured motorist coverages on which an insured is entitled to rely is determined by the number of premiums paid. Uninsured motorist coverage is not dependent on the insured occupying a vehicle named in the policy. *See, e. g., Cammel v. State Farm Mut. Auto. Ins. Co., supra*, and *Brummett v. Grange Ins. Ass'n*, 4 Wash.App. 979, 485 P.2d 88 (1971). In this present case, respondent is entitled to recover under his policy with FAI because uninsured motorist coverage protects an insured, even though he was not occupying a vehicle named in the policy. If we limit respondent's uninsured motorist coverage

to $15,000, he will not have gained anything by paying the second premium, because the uninsured motorist premium which he paid for his first car would cover the $15,000. In effect, FAI will have gained a windfall by collecting the second premium."

We find persuasive the reasoning of Supreme Court of Kansas in *Sturdy v. Allied Mutual Insurance*, 203 Kan. 783, 457 P.2d 34, wherein it said:

"If, in paying one premium for a single automobile, coverage is purchased while occupying the insured automobile along with the coverage not tied to that automobile, the question might well be asked, What coverage is intended by payment of an equal premium for a second automobile? Does it also include the broad reservoir of coverage secured under the first premium for the first automobile, and if not, why?

This court has held in numerous decisions that an ambiguous insurance policy will be construed strictly against the insurer. Where an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. If the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail. Courts should not be astute to evade the meaning of words manifestly intended by the parties. The language of a policy of insurance must, if possible, be construed in such manner as to give effect to the intention of the parties at the time it was made as expressed therein. In the application of this rule the test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of the insured would have understood them to mean. (Citations omitted) Unclear and obscure clauses in a policy of insurance should not be allowed to defeat the coverage reasonably to be expected by the insured.

It must be borne in mind the purpose of uninsured motorist insurance is to pro-

vide compensation for personal injury to the innocent victim of the uninsured motorist. As to the named insured the coverage is a contract benefit for which he has paid. Here the damage to the insured has been determined and he now seeks indemnity for it. He is not seeking any windfall as a result of his injury but he is seeking full indemnity based on payment of two separate premiums. Applying traditional rules of construction we think he is entitled to that coverage. Of the two constructions which could be placed on the limitation of coverage in this particular policy under these facts, this conclusion effectuates insurance as to each automobile mentioned in the policy and permits recovery rather than forfeiture of a benefit for which the insured has paid. Defendant seeks to avoid fully indemnifying its insured on what we believe to be an overly strict construction of its policy in its favor. If it were intended to restrict the limit of liability to $10,000 in one policy where more than one automobile is covered, this could have been very easily accomplished in plain, unmistakable language . . . . . When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages. We would not be understood as implying that an injured insured can pyramid separate coverages in the same policy so as to recover more than his actual loss . . . . ."

The basic premise underlying the rationales used to justify stacking is that consideration for multiple premiums is multiple coverage. In paying one premium for one vehicle, Richardson purchased uninsured motorist coverage for himself and his family while occupying the insured vehicle and other uninsured motorist coverage not tied to that vehicle. *Cothren v. Emcasco Insurance Co., supra.* When Richardson paid three premiums for uninsured motorist coverage on the three vehicles, he was entitled to multiple coverage. It would be anomalous to allow "stacking" where an insured has been issued separate policies containing uninsured motorist insurance as in *Keel, supra,* and not allow "stacking" if more than one vehicle is insured in the same policy even though multiple premiums have been paid.

We hold that where an insured has paid three premiums for uninsured motorist insurance contained in a single policy covering three vehicles, the extent of uninsured motorist coverage is the aggregate limit of coverages corresponding to the number of separate uninsured motorist insurance premiums paid by the insured. Under the record presented, the coverage of $25,000.00 for each person injured in an accident, not to exceed $50,000.00 in any one accident, will be "stacked" or aggregated to provide limits of $75,000.00 and $150,000.00 respectively.

CERTIFIED QUESTION ANSWERED.

WILLIAMS, HODGES, BARNES, DOOLIN, HARGRAVE and OPALA, JJ., concur.