Ronald L. LAKE, individually, and as Administrator of the Estate of Mary Kathryn Lake, Deceased, and as Guardian of Mary Donnita Phy, a Minor, Plaintiff,

v.

James Paul WRIGHT, Cimarron Insurance Company, Inc., and The Western Casualty and Surety Company, Defendants.

No. 58507.

Supreme Court of Oklahoma.

Sept. 14, 1982.

Bryan L. Billings, Barbara R. Billings, Billings, Wolfe & Billings, Woodward, for plaintiff.

Ronald R. Hudson, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for defendants.

BARNES, Vice Chief Justice:

The questions arise out of plaintiff's cause of action for wrongful death and personal injuries.

For the purpose of this certification only, the affected parties, Ronald L. Lake (plaintiff), and Western Casualty and Surety Company (Western), stipulate and agree:

Western issued an insurance policy to plaintiff which was in full force and effect on July 9, 1981, when on said date, plaintiff's wife, Mary Lake, driving a pick-up truck borrowed from a friend and accompanied by plaintiff's and Mary's daughter, Shannon Lake, and Donnita Phy, Mary's daughter by a previous marriage, collided with a vehicle operated by James Paul Wright. Mary Lake and daughter, Shan-

non Lake, were killed and Donnita was severely injured.

Again, for the purpose of these submitted questions only, the parties have stipulated that the collision was caused solely by the negligence of Wright and the damages sustained by plaintiff and Donnita equals or exceeds all available insurance coverage unless "stacking" of the Western policy is allowed. Wright's liability policy provided limits of $25,000.00/$50,000.00. The uninsured motorist coverage carried by the owner of the vehicle occupied by Mary Lake, Shannon and Donnita, provided limits of $10,000.00/$20,000.00.

The $50,000.00 under Wright's policy and the $20,000.00 under the policy of the owner of the borrowed vehicle, for a total of $70,000.00, have been paid into court in an interpleader action.

The policy issued by Western to plaintiff covered six vehicles for a total combined premium of $52.00 calculated by adding the separate premiums charged for uninsured motorist coverage for each of the six vehicles.

As to Question No. 1, plaintiff contends that our unanimous decision in *Richardson v. Allstate Insurance Company,* 619 P.2d 594 (Okl.1980) controls in the case at bar. There we said (p. 598) "... where an insured has paid three premiums for uninsured motorist insurance contained in a single policy covering three vehicles, the extent of uninsured motorist coverage is the aggregate limit of coverages corresponding to the number of separate uninsured motorist insurance premiums paid by the insured."

■ Therefore, plaintiff urges if a specific premium charge is made on each of six vehicles, as here, the insured and his family are entitled to receive six uninsured motorist coverages by "stacking" the limits of the six policies.

Western maintains, to prevent "stacking" of the limits of the six policies herein, the case before us is distinguishable from *Richardson, supra,* because contrary to *Richardson,* Western's policy contained an "Our

Limit Of Liability" clause, which the insurer in the *Richardson* case did not have in its policy. Western's limiting liability clause is as follows:

"1. Regardless of the number of covered auto, insureds, claims made, or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of Uninsured Motorist Insurance shown in the declarations."

Western contends its "Our Limit Of Liability" clause is an express provision which appears on its face to clearly prevent the "stacking" of uninsured motorist policy limits in terms of the number of automobiles covered, and therefore limits the uninsured motorist policy limits to a maximum of $10,000.00 for one person or $20,000.00 per accident.

We agree with Western that its express provision in the policy before us does show that Western, as insurer, clearly intended to limit its liability to the express policy limits, regardless of the number of insured vehicles and premiums collected, and is distinguishable from *Richardson, supra,* because of that provision. We further find the provision to not be ambiguous or in conflict with any other provision of the policy, or so complicated that an average, prudent person would not understand the limits imposed by the insurer and there is nothing in the record before us to show that plaintiff, at the time of the inception of the policy, understood otherwise.

Also, we find nothing in the Oklahoma Uninsured Motorist Statute, 36 O.S.1981 § 3636, that Uninsured Motorist Coverage is to be determined by the number of automobiles insured under a single policy, or separate policies, or by the number of premiums paid. The legislature in 1976 amended the Uninsured Motorist Statute, *supra,* as follows:

"(B) Coverage shall not be less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of § 7–204 of Title 47; Oklahoma Statutes, as the same may be hereafter amended, provided, however,

that *increased limits* of liability *shall* be offered and purchased if desired, *not to exceed the limits provided in the policy of bodily injury liability of the insured.*" (Amending language underscored).

Thus, we feel permitting an insured to purchase increased uninsured motorist limits, not to exceed the bodily injury liability, gave the insured the right, if he chose, since he had to have liability coverage for the protection of others, to be protected to the same extent, but *not to exceed,* that liability coverage in his policy or policies. (Emphasis added).

Therefore, "stacking" where a policy clearly provides to the contrary, as here, would render the "not to exceed" provision of § 3636(B), *supra,* of the uninsured motorist statute, totally meaningless.

We find nothing in the language of 36 O.S.1981 § 3636 requiring "stacking" in the face of an express provision of a policy providing to the contrary.

We therefore answer the first certified question in the negative by holding the policy of Western complies with 36 O.S. Supp.1981 § 3636 and that Western's "Our Limit Of Liability" clause prevents "stacking" or aggregating the limits of liability for uninsured motorist coverage under the six policies in this case.

However, in so answering Question No. 1 in the negative, we must hold that such a clause as Western's (Our Limit Of Liability) under the facts in this case when six vehicles were covered and six premiums paid for uninsured motorist coverage, is contrary to public policy of the State of Oklahoma and the clause is unenforceable under Oklahoma laws. This would apply whether the six coverages were contained in one policy, or separate policies, where multiple premiums were paid. *Richardson, supra.*

In so ruling, we follow our 1976 opinion in *Keel v. MFA Insurance Company,* 553 P.2d 153 (Okl.1976). There, Keel was issued two separate automobile insurance policies, each covering one of his two automobiles, and he paid a premium for uninsured mo-

torist coverage on both policies and sought to recover on both policies. Each policy, as in the initial case, had limits of liability of $10,000.00 for one person and $20,000.00 for two or more.

Keel, in the trial court, obtained a judgment in the sum of $11,500.00. MFA complained said judgment exceeded the maximum limit of the policy which limits uninsured motorist coverage to $10,000.00 to each person in an accident, and that the policies may not be "stacked" to permit Keel to recover the full amount which he was legally entitled to recover against the uninsured motorist.

MFA's argument was based on an attempt to limit recovery by language in the policies which purported to limit the insurer's liability to the highest applicable amount of benefits under one policy, such language being commonly known as "other insurance clauses". The one most pertinent to *Keel, supra,* is as follows:

"Other automobile insurance in the Company—with respect to any occurrence, accident, death, or loss to which this or any other automobile insurance policy issued to the same insured or spouse by the Company also applies, the total limit of the company's liability under all policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy."

In *Keel, supra,* we held the above "other insurance clause", as applied to the facts in that case, was contrary to public policy, repugnant to our uninsured motorist statute, and void for the following reasons:

"(1) The uninsured motorist statute requires that each liability policy must provide uninsured motorist coverage, unless the insured rejects it in writing."

"(2) The statute provides a minimum for uninsured motorist coverage, but allows the insured to purchase additional coverage if desired."

"(3) The appellee has paid, and the appellant collected, separate premiums for each uninsured motorist coverage."

In *Keel, supra,* in referring to 36 O.S.1981 § 3636(B) we said:

"The literal import of the statute leaves no doubt. It directs no automobile policy shall issue in this state unless it offers coverage for payment within specified limits of what an uninsured motorist would be liable for to an insured for damages for bodily injuries. Every policy must offer the coverage, unless rejected in writing. The statute grants the victim prima facie recourse to any and all policies available, subject to the implicit conditions that his claims in aggregate not exceed his damages. The legislature must have been cognizant that a person often becomes an insured, either named or otherwise included in more than one automobile liability policy. Therefore, it must have contemplated when it mandated the uninsured motorist coverage in each policy that the insured person might have recourse to more than one policy. Had that result not been intended, its negation would be expressed in the statute."

"The legislature could have limited protection to the minimum statutory limit had that been its intent, or could have restricted coverage to only one policy. Since it did not, there appears to be no latitude in the statute for an insurer limiting his liability through 'other insurance clauses.'"

"The insured in this case has two policies for which he has paid an additional premium for uninsured motorist coverage. There is no dispute that both policies cover the insured in this accident. The pyramiding or the stacking of the policies is the only dispute. By imposition of both policies, the insured is not receiving a windfall. He has paid the insurer a premium for this protection, and is only attempting to recover the actual amount of his damages which are within the limits of both policies. On the other hand, the insurer has collected a premium for each policy. In such instance, it would be manifestly unjust to permit the insurer to avoid its statutorily imposed liability by its assertion of 'other insurance clauses' which would deny the insured from receiving that for which he has paid a premium."

We, then, must answer Question No. 2 also in the negative and hold that Western's "Our Limit Of Liability" clause in the case before us is unenforceable under Oklahoma law as being against public policy as above set forth.

IRWIN, C.J., and HODGES, LAVENDER, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

WILSON, J., concurs in result.