Crystal E. **COKER**, Appellant,

v.

**ALLSTATE INSURANCE COMPANY,**
an Illinois corporation, Appellee.

No. 81478.

Court of Appeals of Oklahoma,
Division No. 3.

April 19, 1994.

Certiorari Denied July 5, 1994.

Andrew E. Karim, Oklahoma City, for appellant.

George D. Davis, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellee.

### *OPINION*

GARRETT, Vice Chief Judge:

Eric and Kathleen Coker are the named insureds under an automobile insurance policy issued by Appellee, Allstate Insurance Company (Allstate). The Cokers are the parents of Appellant, Crystal E. Coker (Crystal), who is also an insured. The policy covered two vehicles when the policy was purchased in 1987, and in 1989, a third vehicle. The uninsured motorist (UM) policy limit was $10,000/$20,000 for each vehicle. Crystal was injured in an automobile accident on June 10, 1990, while driving one of

the covered vehicles. The accident was caused by the negligence of the other driver, an uninsured motorist.

Crystal made a demand on Allstate for $30,000.00 for UM coverage, which represents $10,000.00 for each vehicle covered under the policy. Allstate paid Crystal $10,000.00 and refused to pay the remaining $20,000.00, denying further UM coverage under the policy. It argued there was only one policy which did not allow "stacking" of benefits for each of the three covered vehicles. Crystal sued Allstate for $20,000.00 for the remaining unpaid UM benefits. Both parties filed motions for summary judgment, and the trial court sustained Allstate's motion. Crystal appeals.

 First, Crystal contends the declarations page of the policy indicates the UM limits apply to each vehicle, and that the "Limit of Liability" endorsements conflicted with it. Crystal also contends a multi-vehicle premium was charged for UM coverage on each vehicle. The declarations page contains the following:

 4. The following coverages and limits apply to each described vehicle *as shown below*.... (Emphasis added).

As argued by Allstate, and confirmed by the declarations page, the coverage is itemized for each vehicle (identified and described as vehicles 1, 2 and 3) *as to collision, liability and comprehensive coverage only.* The UM coverage is shown under "Other Coverages" and includes:

SS Uninsured Motorists

Bodily Injury

$10,000 each person—$20,000 each accident

There is no indication that each vehicle is covered separately for UM coverage in the same way it is shown for collision, liability and comprehensive coverage. The "Other Coverages" portion does not break it down, as separate coverage, by vehicle number. Additionally, the fact that each of the vehicles is covered by UM insurance does not automatically indicate that the coverage may

be stacked. It indicates only that if any one of the covered vehicles is involved in an accident, UM benefits are available. The policy limits for the UM coverage is an amount equal to the policy limits for liability for personal injury. This complies with the minimum requirement of 36 O.S.1991 § 3636 B. Each of the three vehicles *is* covered by UM insurance, but the coverage may not be stacked. Limiting the insurer's liability to single UM coverage, when multiple vehicles are involved, is not against public policy when only one premium is charged and the contract clearly shows the insured's intent to agree to such a limitation. See *Scott v. Cimarron Ins. Co., Inc.,* 774 P.2d 456 (Okl. 1989). cf *Lake v. Wright,* 657 P.2d 643 (Okl. 1982) where multiple premiums were paid.

The premiums charged for the various coverages also show a breakdown by vehicle *for liability, collision and comprehensive* coverage. However, under "Other Coverages", the charge for UM coverage is $23.40, listed one time only, which is contrary to Crystal's contention that a "multi-vehicle" premium was paid for UM coverage. It is undisputed that $23.40 was charged for UM coverage, regardless of the number of vehicles covered by the policy. When two vehicles were covered by the policy, the premium for UM coverage was $23.40. When a third vehicle was added and covered by the policy, the premium for this coverage was $23.40; and, at one time when four vehicles were covered, the premium was $23.40. In other words, regardless of the number of vehicles involved, one premium, a total of $23.40 was charged and paid. Crystal's contention, in effect, that the UM premium was based on the number of vehicles is simply not supported by the facts.[1]

The "Limits of Liability" provision provides:

 The uninsured motorists limit stated on the declarations is the maximum amount payable for this coverage by this policy for any one accident. This means the insuring of more than one auto for other coverages afforded by this policy will not increase

**1.** As pointed out by Justice Wilson in her concurring opinion in *Scott v. Cimarron Ins. Co.* [774 P.2d at 458], UM insurance coverage is required to be tied to people, and any effort to tie it to vehicles alone, must fail.

*our* limit of liability beyond the amount shown on the declarations. (Emphasis in original).

There is no ambiguity in the declarations or the Limits of Liability provisions, whether construed separately or in conjunction with each other.

Summary judgment is appropriate when there are no disputed issues of material fact and when one party is entitled to judgment as a matter of law. Rule 13, Rules of the District Court, 12 O.S. 1991, App. There are no disputed issues of material fact here, and the provisions in the insurance policy are clearly and plainly stated, despite Crystal's assertions of ambiguity. One premium was charged, and Crystal is entitled only to UM coverage for one vehicle. Based on the facts presented here, we think the contractual expectation of the parties was to have singular uninsured motorist protection. Accordingly, Allstate is entitled to judgment as a matter of law, and the trial court correctly sustained its motion for summary judgment.

AFFIRMED.

HUNTER, P.J., and BAILEY, J., concur.