W.E. WITHROW, Jr., Personal Representative of the Estate of Patricia A. Withrow, Deceased, Appellee,

v.

Kenneth Ray PICKARD, Allstate Insurance Company and Oklahoma Farmers Union Mutual Insurance Company, Appellants.

No. 81966.

Supreme Court of Oklahoma.

Nov. 7, 1995.

Rex K. Travis & Mary A. Travis, Oklahoma City, for Appellee.

Kenneth A. Brokaw, Stewart & Elder, Oklahoma City, for Appellant Oklahoma Farmers Union Mutual Insurance Company.

WATT, Justice:

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

In 1987, Oklahoma Farmers Union Mutual Insurance Company (OFU) issued an insurance policy to W.E. Withrow, Jr., and his wife, Patricia, covering their family's two vehicles. The policy provided for bodily injury liability limits of $25,000.00 per person and $50,000.00 per accident (25/50). When Mr. Withrow applied for the policy, he requested uninsured motorist (UM) coverage in amounts equal to his liability limits. The

application Withrow read and signed stated that he selected the desired UM coverage:

> ... with the full understanding that, regardless of the number of vehicles described in this policy, only one premium is charged for Uninsured Motorist Coverage and therefore only one limit of protection applies to any claim arising out of any one accident to which this coverage is applicable.

The insurance policy subsequently issued to the Withrows also contained a "Limit of Liability" provision which clearly stated that OFU's liability was limited to single UM coverage, regardless of the number of vehicles insured under the policy, when only one premium for UM coverage was charged.

During the ensuing three years, the Withrows replaced their original two cars with two others. Both the liability and UM limits of their insurance policy remained the same after each transaction. On June 4, 1991, the Withrows added a third car to their policy. The endorsement form listed W.E. and/or Patricia Withrow as the named insureds and contained the same policy number as the Withrows' existing insurance policy. Larry Withrow, on behalf of his father, indicated on the form that he desired 25/50 coverage for bodily injury liability limits for the new car. The front of the form also included a paragraph setting forth the options for accepting or rejecting UM coverage and ended with the sentence, "Please read and initial the explanation of uninsured/underinsured motorist coverage on the reverse side of this form." The following statement appeared below that paragraph:

> I have read the explanation of the uninsured/underinsured motorist coverage in the paragraph above and on the reverse side of this form and understand what the coverage is and the options as to the purchase or rejection of that coverage. I further understand that because only one premium per policy is charged for uninsured/underinsured motorist coverage, regardless of the number of automobiles insured under the policy, only one limit of

protection applies to any claim arising out of any one accident to which this coverage is applicable.

The reverse side of the form contained the standard UM coverage form required by 36 O.S.1991 § 3636(H). Below the explanation of UM coverage options, Larry checked the boxes indicating he wanted the same amount of UM coverage as bodily injury liability coverage (25/50). Mr. Withrow stipulated that he had no objection to the selections made by his son.

The parties [1] stipulated that OFU never charged more than one premium for UM coverage per policy and that the single premium was not based upon the number of vehicles insured under a policy. They also stipulated that OFU does not offer or write any automobile insurance policy which provides more than a single UM limit per policy.

On June 27, 1991, Patricia Withrow was killed in an automobile/pedestrian accident caused by an underinsured motorist. The parties stipulated that the damages occasioned by Patricia's death equal or exceed all available UM coverage. After OFU paid Patricia's estate a single UM amount of $25,000.00, Mr. Withrow filed the instant suit claiming he should be allowed to "stack" his UM coverage for each of his three vehicles in the sum of $75,000.00. Withrow argued that the addition of the third car to his insurance policy created a new policy for which he should have been offered "stackable" UM coverage. Because such UM coverage was not offered or rejected at that time, Withrow intimates that UM coverage on all three vehicles exists by operation of law. OFU insisted that it was not required to, and did not, offer the Withrows the option of stacking their UM coverage when the third car was added to their policy.

Both parties moved for summary judgment and submitted stipulations of fact to the trial court. The trial judge granted summary judgment to Withrow and awarded him $75,000.00 (to be offset by the $25,000.00 already received from OFU). The Court of Appeals

---

1. Neither the negligent motorist, Kenneth Ray Pickard, nor his insurer, Allstate Insurance Company, are parties to this proceeding.

reversed and ordered that judgment be entered for OFU for a single-policy limit of $25,000.00. This Court granted Withrow's petition for writ of certiorari on March 8, 1995.

## ISSUE

The issue presented in this proceeding is whether the trial court erred in ruling that Withrow is entitled to stack his UM coverage. We conclude that it did. Accordingly, the judgment of the trial court is reversed and remanded with instructions.

## DISCUSSION

Title 36 O.S.1991 § 3636 mandates that every automobile liability insurance policy issued in this state provide UM coverage, unless the insured rejects it in writing. Subsection 3636(B) specifically provides that, if selected by the insured, uninsured motorist:

> [c]overage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 ...; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured....

The bodily injury/death liability limits prescribed by 47 O.S.1991 § 7–204 are $10,-000.00 per person and $20,000.00 per accident (10/20).

When they originally obtained their policy, the Withrows had the option under § 3636 of waiving UM coverage entirely or selecting UM coverage in amounts between 10/20 and the limits of their bodily injury liability coverage. As previously stated, the Withrows selected policy limits of 25/50 for bodily injury liability coverage on their two vehicles and 25/50 for UM coverage. In light of their policy's liability limits, the Withrows' 25/50 UM coverage was the maximum UM coverage allowed by law. When the Withrows added a third vehicle to their policy, they selected liability limits of 25/50 for that car and again selected the maximum amounts of UM coverage allowed under § 3636(B): 25/50.

Withrow's claim that OFU was legally obligated to offer him stackable UM coverage when he added a third car to his policy is meritless. We recognize that the addition of a vehicle to an existing policy constitutes a new policy distinct from the original and, as such, § 3636 requires that UM coverage be offered in conjunction with the coverage of the new vehicle. *Beauchamp v. Southwestern Nat'l Ins. Co.,* 746 P.2d 673, 676 (Okla.1987); 36 O.S.1991 § 3636(G)(2). We also agree with Withrow that a new policy was created when he added a third vehicle to his original policy. However, as discussed in detail below, Oklahoma law does not require an insurer to offer stackable UM coverage when a new vehicle is added to an existing insurance policy.

We find that OFU did all that was required of it by law when the Withrows requested coverage for their third car. OFU supplied the Withrows with the UM coverage form statutorily prescribed by § 3636(H), which disclosed all of the UM options available to them. The Withrows had the option of selecting UM coverage in amounts between 10/20 and 25/50, or of rejecting UM coverage entirely. They chose the maximum coverage allowed by law. Neither *Beauchamp* nor § 3636 requires an insurer to offer UM coverage in amounts exceeding the bodily injury liability limits of an insured's policy. In fact, such policies are specifically prohibited by § 3636(B).

"It is well settled in Oklahoma that insureds may stack their UM coverage for the additional vehicles under a policy if they have paid separate UM premiums for each vehicle, or if they have separate policies and pay UM premiums for each policy." *Kinder v. Oklahoma Farmers Union Mut. Ins. Co.,* 813 P.2d 546, 548 (Okla.Ct.App.1991), citing *Lake v. Wright,* 657 P.2d 643 (Okla.1982); *Richardson v. Allstate Ins. Co.,* 619 P.2d 594 (Okla.1980); *Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla.1976). These cases illustrate that § 3636 does not prohibit an insurer from charging multiple premiums for UM coverage in a single insurance policy which covers multiple vehicles. Under such a policy, if damages caused by an uninsured motorist

exceed available UM coverage, an insured may aggregate or "stack" UM coverage. As we said in *Richardson,* where an insured pays multiple premiums for UM coverage based upon the number of vehicles covered in a policy, "the number of uninsured motorist coverages on which [the] insured is entitled to rely is determined by the number of premiums paid." *Id.,* 619 P.2d at 597.

Conversely, there is nothing in § 3636 that requires an insurer to sell (or offer to sell) stackable UM coverage in a single insurance policy which covers multiple vehicles. In *Lake, supra.,* this Court examined an insurance policy that contained a clause purporting to limit the insurer's liability to pay only one UM amount per accident regardless of the number of automobiles covered under the policy. We concluded that the clause was unenforceable as a matter of public policy because the insured had paid six premiums for the six vehicles covered by his policy. However, we found nothing in § 3636 that requires UM coverage be determined by the number of automobiles insured under a single policy:

> [W]e feel permitting an insured to purchase increased uninsured motorist limits, not to exceed the bodily injury liability, gave the insured the right, if he chose, ... to be protected to the same extent, but *not to exceed,* that liability coverage in his policy....
>
> Therefore, "stacking" where a policy clearly provides to the contrary ... would render the "not to exceed" provision of § 3636(B) ... totally meaningless.
>
> We find nothing in the language of ... § 3636 requiring "stacking" in the face of an express provision of a policy providing to the contrary.

*Id.* at 645 (emphasis in original).

The rationale underlying our decisions regarding stacking of UM coverage was further clarified in *Scott v. Cimarron Ins. Co., Inc.,* 774 P.2d 456 (Okla.1989). There, the insured obtained an insurance policy covering four vehicles with UM limits of 10/20. The application form clearly apprised the insured that he would be charged only one premium for UM coverage regardless of the number of vehicles insured under the policy and that the insurer intended that there be only one UM limit entitlement. The insured was subsequently killed in an automobile accident caused by an uninsured motorist, and his wife made a demand for $40,000.00 in UM coverage based on a stacking theory.

In rejecting the wife's claim, this Court ruled that stacking of UM benefits is not required under Oklahoma law when more than one vehicle is insured by an insurance policy but only a single premium is collected for UM coverage. We held that one of the crucial factors to be considered in determining whether UM coverage can be stacked is whether separate premiums have been paid for the coverage sought to be aggregated. "Our cases permitting stacking have done so based on our perception of the reasonable contractual expectations of the parties as reflected, in part, by the number and amount of uninsured motorist premiums paid." *Id.* at 458. Under the facts presented, we concluded that "the contractual expectation of the parties was to have singular uninsured motorist protection...." *Id.*

The *Scott* decision also contains two cautionary declarations. The first noted that it was significant to the outcome of the case that the insured in *Scott* was given the option of obtaining increased coverage under the policy's "limit of liability" clause. *Id.* at 457 n. 2 and 458 n. 3. The Court of Appeals confronted this statement in *Davis v. Equity Fire & Casualty Co.,* 852 P.2d 780 (Okla.Ct. App.1993), and we find their analysis persuasive here:

> The chief problem with giving "the choice" factor in the *Scott* case controlling effect ... is that the amount of bodily injury liability provided for each of the four vehicles insured under the policy in *Scott* is not disclosed in the opinion. The Uninsured Motorist Insurance Statute, 36 O.S.1991 § 3636, requires an insurer to offer UM coverage for not less than the minimum limits of compulsory liability insurance and "increased limits of [UM] liability ... *not to exceed the limits* provided in the policy *of bodily injury liability* of the insured." The court in *Lake v. Wright,* 657 P.2d 643, 645 (Okla.1982), observed that the purpose of permitting an insured

to purchase increased UM limits is to give the insured the right, if he desires, to be protected *to the same extent, but not to exceed,* the liability coverage he purchases to protect others.

*Davis,* 852 P.2d at 780–81 (emphasis in original).

In the present case Withrow was given the option, which he exercised, of purchasing the maximum amount of UM coverage allowed by law in light of his policy's bodily injury liability limits. Further, as previously pointed out, "nothing in § 3636 requires stacking in the face of an express provision of a policy providing to the contrary." *Davis,* 852 P.2d at 781, citing *Lake, supra.* Thus, *Scott*'s admonition regarding "choice" is inapplicable where, as here, the insured selects the maximum amounts of UM coverage allowed under § 3636(B) at the time a new vehicle is added to the insured's policy.

■ The second cautionary statement announced in *Scott* concerned "limit of liability" clauses similar to the one at issue. The Court stated, "Consistant [sic] with *Lake* . . ., we think that a clause limiting the liability of an insurer to single uninsured motorist coverage when multiple automobiles are insured would be void and unenforceable as against public policy if the contract did not clearly show that it was the *insured's intent* to agree to such a limitation." *Scott,* 774 P.2d at 458 n. 3 (emphasis in original). No such *public policy concern is raised here.* The application filled out by Mr. Withrow, the UM "Limit of Liability" clause of his insurance policy, and the endorsement form filled out by Larry Withrow all contained clear statements that OFU's liability was limited to single UM coverage regardless of the number of vehicles covered by the policy. The record before us supports the conclusion that Withrow intended to agree to such a limitation and he has advanced no argument to the contrary. Under the facts of this case, we conclude that the contractual expectation of the parties was to have singular UM coverage, both before and after the third vehicle was added to the policy.

■ We similarly reject Withrow's assertion that, because he was not offered stacka-

ble UM coverage when he endorsed a third vehicle to his policy, additional UM coverages were included in his policy as a matter of law. Withrow's argument appears to be based on this Court's conclusion in *Beauchamp* that an insurer's "failure to offer uninsured motorist coverage with [a] new policy, and the attendant failure to obtain a written rejection required by . . . § 3636(F), result[s] in the inclusion of uninsured motorist coverage as part of the policy by operation of law." *Id.,* 746 P.2d at 676. We have already determined that an insurer is not required to offer policies with stackable UM coverage. We now reiterate that, unlike the insureds in *Beauchamp,* Withrow *was* offered UM coverage with his new policy. The result reached in *Beauchamp* is unwarranted here.

Finally, we take this opportunity to point out that *Kinder v. Oklahoma Farmers Union Mut. Ins. Co.,* 813 P.2d 546 (Okla.Ct.App. 1991), lacks precedential value and does not conflict with today's pronouncement. *Kinder* contained a fact pattern similar to the present case. However, the issue on appeal in *Kinder* was whether the insureds were made aware, at the time they added additional vehicles to their policy and increased their UM coverage, that their UM insurance would be limited to single coverage because only one UM premium was being collected. The appellate court remanded the matter to the trial court after finding that material issues of fact remained as to whether the insureds were properly notified of the UM limitation:

> Under *Scott,* . . . the insured was held to the lower limits and was unable to stack the UM coverage on multiple vehicles because the Supreme Court found the insured had made informed choices about the coverage selected. We do not have the same indication from the evidentiary materials filed with the trial court in the present case. Moreover, there are affidavits filed with the motion for summary judgment of [the insured] which indicate there was no meaningful choice given.

*Kinder* at 549.

The evidentiary materials before us reveal that Withrow made informed choices about the UM coverage he selected. His complaint

is not that he was improperly notified of his UM coverage options, but only that he should have been offered stackable UM coverage. The law makes no such requirement.[2]

## CONCLUSION

When an insured adds a vehicle to an existing liability insurance policy, § 3636 requires that the insurer inform the insured of all UM coverage options. This is true regardless of the existence or amounts of UM coverage under the original policy. It is only after being armed with such information that an insured can make informed choices regarding UM coverage. Here, OFU properly supplied Withrow with the statutorily mandated UM coverage form and Withrow can make informed choices regarding UM coverage. Here, OFU properly supplied Withrow with the statutorily mandated UM coverage form and Withrow selected the maximum UM coverage available in light of the liability limits of his policy.

■ Furthermore, nothing in § 3636 requires an insurer to sell (or offer to sell) stackable UM coverage in a single insurance policy which covers multiple vehicles. Limiting an insurer's liability to single UM coverage, where multiple vehicles are insured under one policy, is not against public policy when only one premium is charged for UM coverage and the policy clearly shows that the insured intended to agree to such a limitation. In the present case, Withrow was charged only one premium for UM coverage and the evidentiary materials clearly show that he intended to agree to single UM coverage.

Certiorari previously granted. The opinion of the Court of Appeals is vacated. The judgment of the district court is reversed and this cause is remanded with instructions to enter judgment for Withrow in the amount of $25,000.00, which represents that sum OFU previously paid Withrow for single UM coverage.

2. Any intimation in *Kinder* that an insurer must offer stackable UM coverage in a single insurance policy which covers multiple vehicles is specifically negated by this opinion.

KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and SUMMERS, JJ., concur.

ALMA WILSON, C.J., dissents.

ALMA WILSON, Chief Justice, dissenting:

The majority opinion concludes that 36 O.S.1991, § 3636 does not require that an insurer sell or offer to sell multiple uninsured motorist coverage. I have concluded that the statute requires that automobile insurance companies offer separate UM coverage on every vehicle, with the result that the coverages may be stacked. Where companies have failed to follow the mandate of the statute, the coverages may be stacked even though only one UM premium has been paid on multiple vehicles.

The facts show that the Withrows carried a policy with Oklahoma Farmers Union Mutual Insurance Company (OFU) covering two vehicles, which limited UM coverage to the liability limits of one vehicle, and accordingly charged only one premium. They replaced their original two cars with two others. A third vehicle was added to their policy, and Mr. Withrow's son, Larry, on behalf of his father, indicated a desire for the same amount of UM coverage as liability coverage for the vehicle. The majority opinion details the language in the application.

Section 3636(A) provides that: "No policy insuring ... a motor vehicle shall be issued, delivered, renewed, or extended ... with respect to a motor vehicle registered or principally garaged in this state unless the policy includes [uninsured motorist] coverage...." While it is settled that UM coverage is for the protection of persons and cannot be tied to vehicles alone,[1] the coverage does have a connection to vehicles. Subsection A provides that no policy insuring a motor vehicle with respect to a motor vehicle shall be issued unless the policy includes UM coverage. In both instances of the use of the words "motor vehicle" the singular is used. If the legislature had intended to allow the total

1. *State Farm Mut. Auto Ins. Co. v. Wendt,* 708 P.2d 581, 585 (Okla.1985).

amount of UM coverage for multiple vehicles to be limited to the insurance liability limit on any one vehicle, the legislature could have easily expressed this by providing "No policy insuring ... a motor vehicle or vehicles ... with respect to a motor vehicle or vehicles...." The choice of the singular and the omission of the plural indicates that the UM coverage was to be offered for each vehicle insured.

Section 3636(F) provides that a named insured shall have the right to reject UM coverage in writing. Subsection G(2) provides that a new form affecting uninsured motorist coverage shall be required when another vehicle is added that is not a replacement vehicle. If the UM coverage was selected on the third vehicle, what did the Withrows get? According to the majority opinion, the Withrows received nothing. They had UM coverage already, in the same amount Larry requested. What if he had chosen to reject UM coverage on this third vehicle, would that have changed the UM coverage for the first two vehicles? What would be the implications if the insured selected a lesser coverage? Would the single premium in the original policy be reduced and the coverage lessened? Would the insured understand that was the step he was taking? It would appear that Larry's choice was a vain act, a mere formality to comply with the legislative mandate that a new form be completed when an additional vehicle is added to a policy. But this, of course, also makes § 3636(G)(2) redundant if insureds have previously selected UM coverage for the vehicles in their original policy. If the insureds already have the statutory maximum UM coverage under one policy, the majority opinion nullifies any action taken on an additional vehicle.

Where the UM statute, 36 O.S.1991, § 3636, is involved, we are dealing primarily in public policy, not contractual rights. Even though the contract is clear on what it includes and excludes, provisions contrary to public policy are simply unenforceable. *Lake v. Wright,* 657 P.2d 643, 645 (Okla.1982). Although the insurance contract in the *Lake* case clearly precluded stacking the UM cov-

erages, this Court held that the antistacking clause was contrary to public policy.

In construing statutes we have held that where a statute is ambiguous, it is to be given a reasonable construction if it will avoid absurd consequences without violating legislative intent, because the legislature will not be presumed to have done a vain and useless act in the promulgation of a statute. *TRW/Reda Pump v. Brewington,* 829 P.2d 15, 20 (Okla.1992). Unless the legislature truly intended that additional UM coverage be offered for vehicles added to existing policies, what is the purpose of subsection G? Subsection G(2) was added in 1990,[2] long after the stacking issue was settled by *Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla.1976).

I must conclude that the legislature intended that insurers offer insureds separate UM coverage with separate premiums when vehicles are added to liability policies. When separate premiums are collected, stacking of UM coverage is proper. Additionally, where UM coverage is required to be offered and is not, such is written into the policy by operation of law. *Moon v. Guarantee Ins. Co.,* 764 P.2d 1331 (Okla.1988). I would affirm the judgment of the trial court.

---

**2.** 1990 Okla.Sess.Laws, ch. 297, § 4.