Thomasina WILSON, Appellee,

v.

ALLSTATE INSURANCE COMPANY,
Appellant.

No. 86177.

Supreme Court of Oklahoma.

Feb. 20, 1996.

George D. Davis, McKinney, Stringer & Webster, P.C., Oklahoma City, for Appellant.

Jerry Kirksey & Benjamin L. Barnes, Jerry Kirksey & Associates, Edmond, for Appellee.

WATT, Justice:

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

The facts of this case are undisputed. On October 25, 1992, appellee, Thomasina Wilson, was involved in an automobile accident

with an underinsured motorist. At the time of the collision, Wilson was insured by appellant, Allstate Insurance Company. Wilson's insurance policy covered two vehicles and provided for $25,000.00 per person and $50,000.00 per accident (25/50) in uninsured motorist (UM) coverage (the same limits she maintained for bodily injury liability coverage). The policy also contained a provision purporting to limit Allstate's liability to pay only one UM amount per accident regardless of the number of automobiles insured under the policy.

Allstate admitted that it utilizes a two-tiered UM premium rate structure for all of its automobile policies in Oklahoma. Allstate charges one amount for a given level of coverage on single-vehicle policies, but charges a higher premium for the same level of coverage on multiple-vehicle policies. At the time of Wilson's accident, Allstate was charging its Oklahoma single-car policyholders $31.40 for 25/50 UM coverage. Wilson was charged a premium of nearly twice that amount—$58.70—for identical UM coverage on her two-car policy.

Claiming that her damages exceeded $50,000.00, Wilson made a demand that Allstate aggregate or "stack" her UM coverage in the sum of $50,000.00. Allstate paid Wilson only a single UM coverage amount of $25,000.00. Wilson then brought this suit for the remaining $25,000.00. The District Court of Oklahoma County, the Honorable Eugene H. Mathews, granted Wilson's motion for summary judgment. The court held that the UM coverage must be stacked (1) because Allstate charged and collected what amounted to separate premiums for UM coverage on each of Wilson's two cars, or, in the alternative, (2) because Allstate did not offer Wilson a policy with "stackable" UM coverage. The court also specifically found that Wilson's damages exceeded $50,000.00. Allstate does not challenge the amount of Wilson's damages, but appeals from the remainder of the trial court's judgment. This Court granted Allstate's motion to retain on November 15, 1995.

### ISSUES

Two issues are presented in this appeal: (1) Is an insurer required to stack UM benefits when it has charged and collected what amount to separate premiums for such coverage on each of two vehicles covered under the same policy, and (2) Is an insurer required to stack UM benefits where it did not offer the insured the option of purchasing "stackable" UM coverage in a multiple-vehicle insurance policy. We answer "yes" to the first question and "no" to the second. Because an affirmative answer to either question would have supported the trial court's ruling, we affirm the judgment.

### I. AN INSURER THAT CHARGES AND COLLECTS THE EQUIVALENT OF SEPARATE PREMIUMS FOR UM COVERAGE MUST STACK UM BENEFITS FOR EACH OF THE PREMIUMS CHARGED

■ The appellate courts of this state have addressed the question of UM "stackability" a number of times in various contexts in recent years. However, the particular fact pattern of this case presents an issue of first impression before this Court. Nonetheless, extant jurisprudence clearly leads us to conclude that Allstate must stack the UM benefits in this case. Allstate defends its position that stacking of UM benefits is unwarranted by asserting that it has charged Wilson only a "single" premium for her UM coverage and that the insurance policy contains an unambiguous, valid anti-stacking clause. We need not discuss whether Wilson's policy contains a legally sufficient anti-stacking provision because we find that Allstate's "single premium" argument is meritless.

In *Withrow v. Pickard*, 905 P.2d 800 (Okla. 1995), this Court examined a multiple-vehicle insurance policy similar to the one in this case—one which purported to limit the insurer's liability to pay only one UM benefit amount per accident regardless of the number of vehicles covered under the policy. Under the facts of that case, we held that the insureds were entitled to only single UM coverage limits. Like the present case, the insureds in *Withrow* paid a "single" charge for UM coverage. However, the UM premi-

um paid in *Withrow* was not based upon the number of vehicles insured under the policy. The premium cost remained the same regardless of the number of vehicles covered by the policy.

In contrast, Allstate utilizes a two-tiered UM premium rate schedule that almost doubles the cost of UM coverage when more than one vehicle is covered by a policy. By implementing such a rate structure, Allstate has attempted to limit multi-car policyholder's UM recovery to single coverage while at the same time charging an increased premium based upon the number of vehicles insured thereunder. Such a scheme is contrary to Oklahoma law. Regardless of what Allstate may label its "single" charge for UM protection, the higher rate charged Wilson for her multiple-vehicle policy is the legal equivalent of "multiple" premiums.

The *Withrow* Court summarized the effect charging multiple premiums has upon UM recovery as follows:

> "It is well settled in Oklahoma that insureds may stack their UM coverage for the additional vehicles under a policy if they have paid separate UM premiums for each vehicle, or if they have separate policies and pay UM premiums for each policy." *Kinder v. Oklahoma Farmers Union Mut. Ins. Co.,* 813 P.2d 546, 548 (Okla.Ct. App.1991), citing *Lake v. Wright,* 657 P.2d 643 (Okla.1982); *Richardson v. Allstate Ins. Co.,* 619 P.2d 594 (Okla.1980); *Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla. 1976).... As we said in *Richardson,* where an insured pays multiple premiums for UM coverage based upon the number of vehicles covered in a policy, "the number of uninsured motorist coverages on which [the] insured is entitled to rely is determined by the number of premiums paid." *Id.,* 619 P.2d at 597.

*Withrow,* 905 P.2d at 803–4.

The case of *Lake v. Wright,* 657 P.2d 643 (Okla.1982), is illustrative of this point. In *Lake,* this Court examined an insurance policy that purported to limit the insurer's liability to pay only one UM amount per accident regardless of the number of vehicles covered by the policy. We held that the limitation clause was unenforceable as a matter of public policy because the insured had paid six premiums for the six vehicles covered by his policy. In the present case, public policy dictates that Wilson, having paid multiple premiums for her UM coverage, be permitted to stack her UM benefits. *See also Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla.1976) (public policy mandated stacking of UM benefits where insured paid separate premiums for UM coverage on two vehicles covered by separate insurance policies).

In addition to public policy concerns, the contractual expectations of the parties is a crucial factor to be considered in determining whether UM benefits may be stacked. "Our cases permitting stacking have done so based on our perception of the reasonable contractual expectations of the parties as reflected, in part, by the number and amount of uninsured motorist premiums paid." *Scott v. Cimarron Ins. Co., Inc.,* 774 P.2d 456, 458 (Okla.1989). We believe that the reasonable expectations of the contracting parties in the present case, as reflected by the increased multi-car premium Wilson paid for UM coverage, was to have increased UM protection.

Also instructive is *Kramer v. Allstate Ins. Co.,* 909 P.2d 128 (Okla.Ct.App.1994), a case which Allstate concedes involved the identical stacking issue under the same auto policy at issue here. The only difference between *Kramer* and this case is that the appellant in *Kramer* had three, rather than two, vehicles insured under his policy. The Court of Appeals held:

> [T]his is not a "single premium" case, because Kramer paid a higher premium for the same amount of coverage than he would have paid had he insured only a single vehicle on his policy.... Allstate used a policy with two premium rate schedules; a single car schedule and a multi-car rate schedule. This is a two premium policy and it can be stacked....
>
> \* \* \* \* \* \*

Based on the summary judgment record below, we conclude that by charging nearly twice as much for UM coverage on multiple-vehicle policies as it did for single-vehicle policies, Allstate created the reasonable contractual expectation that the

amount of UM coverage on a multiple-vehicle policy would be correspondingly greater than the amount of coverage on a single-vehicle policy. Allstate cannot defeat that expectation of greater coverage by policy language which purports to limit such coverage.

*Kramer*, 909 P.2d at 129–130 (citations omitted).[1]

In applying the foregoing precedent to this case, we conclude that Allstate must stack the UM benefits of Wilson's policy. Allstate did not charge Wilson a "single" premium for her UM coverage. The higher rate Allstate charged for Wilson's multiple-vehicle UM coverage is the equivalent of a multiple premium. We note here, as did the Court of Appeals in *Kramer*, that the inclusion of more than two cars in an Allstate multiple-vehicle policy would have no effect upon the number of UM benefit amounts recoverable. The premium charged for UM coverage under Allstate's multi-car policies is the legal equivalent of two premiums. (The UM premium charged by Allstate for two or more cars is approximately 1.9 times the amount charged for the same coverage on a single-vehicle policy). No additional premiums are charged for the coverage of three or more vehicles under the policy and recovery is limited to twice the stated UM coverage. On this basis, both public policy and the reasonable expectations of the contracting parties created by the higher charge dictate that Wilson is entitled to recover twice the stated limits on her UM coverage, for a maximum of $50,000.00. "[I]t would be manifestly unjust to permit the insurer to ... deny the insured from receiving that for which [s]he has paid a premium." *Keel*, 553 P.2d at 156.

## II. OKLAHOMA LAW DOES NOT REQUIRE AN INSURER TO OFFER "STACKABLE" UM COVERAGE IN A MULTIPLE–VEHICLE INSURANCE POLICY

 The answer to the second issue presented today was effectively answered in *Withrow v. Pickard*, 905 P.2d 800 (Okla. 1995). The *Withrow* Court held:

[A]n insurer [is not required] to sell (or offer to sell) stackable UM coverage in a single insurance policy which covers multiple vehicles. Limiting an insurer's liability to single UM coverage, where multiple vehicles are insured under one policy, is not against public policy when only one premium is charged for UM coverage and the policy clearly shows that the insured intended to agree to such a limitation.

*Id.* at 806.

Oklahoma law does not require insurers to offer stackable UM coverage with multiple-vehicle policies. Therefore, an insurer that does not offer such a policy cannot, by that mere fact alone, be forced to pay stacked UM benefits. The present case was decided on the fact that Allstate charged Wilson multiple premiums for her UM coverage. The mere fact that Allstate did not offer Wilson a policy with stackable UM benefits is of no consequence because Allstate was under no legal obligation to do so.

## III. CONCLUSION

"Summary judgment is a procedural device used to reach a final judgment where there is no dispute as to any material facts." *Hargrave v. Canadian Valley Elec. Co–Op., Inc.,*

---

1. Contrary to Allstate's assertion, the *Kramer* decision is not inconsistent with *Coker v. Allstate Ins. Co.*, 877 P.2d 1175 (Okla.Ct.App.1994). Allstate mistakenly claims that *Coker* addressed the identical stacking issue presented in *Kramer* and held that Allstate's automobile policy did not permit the stacking of UM coverage. In *Coker*, the insured sued to stack UM coverage for each of three vehicles covered by her policy, claiming a "multi-vehicle" premium had been paid for UM coverage. The court specifically noted:

It is undisputed that $23.40 was charged for UM coverage, regardless of the number of ve-

hicles covered by the policy. When two vehicles were covered by the policy, the premium for UM coverage was $23.40. When a third vehicle was added and covered by the policy, the premium for this coverage was $23.40. In other words, regardless of the number of vehicles involved, one premium, a total of $23.40 was charged and paid. [The insured's] contention, in effect, that the UM premium was based on the number of vehicles is simply not supported by the facts.

*Coker*, 877 P.2d at 1176. *Kramer* and *Coker* do not conflict.

792 P.2d 50, 55 (Okla.1990). "Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Buck's Sporting Goods, Inc. of Tulsa v. First Nat'l Bank & Trust Co. of Tulsa,* 868 P.2d 693, 698 (Okla.1994). The material facts in the present case are undisputed and demonstrate that Wilson was entitled to judgment as a matter of law. The trial court's summary judgment order, although based in part upon an erroneous legal conclusion, reached the correct result and must be upheld. *See Gentry v. American Motorist Ins. Co.,* 867 P.2d 468, 470 (Okla. 1994).

THE JUDGMENT OF THE DISTRICT COURT IS AFFIRMED.

HODGES, LAVENDER, SIMMS, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., concurs in judgment.

HARGRAVE, J., concurs in part, dissents in part.

OPALA, J., dissents from Part I, concurs from Part II.

KAUGER, V.C.J., not participating.