Thomas W. COFER, Administrator of the Estate of Eddie Moye Cofer, Plaintiff,

v.

Johnny Wesley MORTON and Iowa Mutual Insurance Co., Defendants.

No. 72485.

Supreme Court of Oklahoma.

Dec. 12, 1989.

Jack B. Sellers Law Associates, Inc. by Bruce A. McKenna, Sapulpa, for plaintiff.

Abowitz & Welch by Mort G. Welch, Oklahoma City, for defendant Iowa Mut. Ins. Co.

HODGES, Justice.

The United States District Court for the Western District of Oklahoma has certified two questions of law to this Court pursuant to the Oklahoma Uniform Certification of Questions of Law Act, 20 O.S.1981 § 1601 et seq. The two questions certified for answer are:

I. Under Okla.Stat. tit. 36, § 3636(C), as amended effective March 16, 1976, and prior to its amendment effective May 16, 1979, is the determination that a vehicle is an "uninsured motor vehicle" made by comparing (1) the per person limit of liability of the tortfeasor's bodily injury liability insurance coverage to the per person limit of liability of the insured's uninsured motorist coverage, or (2) the per person limit of liability of the tortfeasor's bodily injury insurance coverage to the "stacked" limits of liability of the insured's uninsured motorist coverage calculated by multiplying the per person limit of liability of the uninsured motorist coverage by the number of vehicles insured under the policy for which a separate premium for uninsured motorist coverage is charged?

II. Under Okla.Stat. tit. 36, § 3636(B) as amended effective March 16, 1976, what is the effect, if any, of the failure

of the insurer providing uninsured motorist coverage to offer to the insured increased limits of liability for uninsured motorist coverage not to exceed the limits of liability provided in the insured's policy for bodily injury liability insurance coverage where one of the named insureds is aware of the availability of increased limits of liability for uninsured motorist coverage and chooses to purchase uninsured motorist coverage with the minimum limits of liability provided for by law?

The Certification Order provides for consideration by this Court of the following statement of facts describing the nature of this controversy:

1. Defendant Iowa Mutual Insurance Company issued a policy of automobile insurance number 35–1271343 in the name of Roy D. Goodner, Inc., Roy D. Goodner, Thomas D. Goodner, Red Top Stamp Co., and Goodner # 2, Inc., effective from September 17, 1978 until September 17, 1979, with a per person limit of liability for uninsured motorist coverge of $5,000, and a per person limit of liability for bodily injury liability coverage of $250,000. The policy when issued described ten vehicles for which a separate premium was charged on each vehicle for uninsured motorist coverage. As of April 15, 1979, 12 vehicles were described on the policy for which a separate premium was charged for uninsured motorist coverage.

2. Thomas D. Goodner is the son of Roy D. Goodner and the President of Roy D. Goodner, Inc., Red Top Stamp Company and Goodner # 2, Inc. He was the person who purchased the Iowa Mutual Insurance Company policy from the Duncan Insurance Agency in Duncan, Oklahoma.[1] At the time he purchased the policy Mr. Goodner was aware uninsured motorist coverage could be obtained in an amount up to the amount of liability insurance purchased in the policy but decided to purchase the minimum

amount of uninsured motorist coverage available instead.

3. For the purpose of this certification proceeding, it is assumed that Iowa Mutual Insurance Company did not make an offer to Thomas D. Goodner of uninsured motorist coverage with increased limits of liability not to exceed the limits of liability of the bodily injury liability insurance coverage in the policy.

4. Eddie Moye Cofer was the natural son of Shirley M. Goodner. On April 15, 1979, Shirley M. Goodner was married to Roy D. Goodner, who was not Eddie Moye Cofer's natural father.

5. On April 15, 1979, while a pedestrian, Eddie Moye Cofer was struck by a vehicle driven by Johnny Wesley Morton.

6. At the time of the accident Morton was insured under a policy of automobile insurance having a per person limit of liability for bodily injury liability coverage of $10,000.

7. On April 9, 1981, Eddie Moye Cofer filed a Complaint in this case against Morton to recover damages as a result of the April 15, 1979 accident. On March 3, 1982, Eddie Moye Cofer filed an Amended Complaint adding Iowa Mutual Insurance Company as a Defendant and seeking recovery for the damages sustained as a result of the April 15, 1979 accident under the uninsured motorist and medical expense coverages of the policy issued by Iowa Mutual Insurance Company.

8. After a bifurcated trial on September 27, 1982, a jury returned a verdict in favor of Cofer against Morton, finding Cofer 30% negligent and Morton 70% negligent in causing the accident on April 15, 1979, and fixing Cofer's damages at $300,000. On September 28, 1982, a jury answered an interrogatory finding Eddie Moye Cofer was a resident of the household of Roy D. Goodner and Shirley Goodner on April 15, 1979. The effect of this finding was to qualify Eddie Moye Cofer as a person insured under the uninsured motorist coverage of

---

1. For the purposes of answering this question it is assumed that Thomas D. Goodner had the authority to both purchase the policy in question and reject any coverage be felt to be unnecessary for whatever reasons.

the policy issued by Iowa Mutual Insurance Company.

9. On February 3, 1983, judgment was entered on the verdict in favor of Eddie Moye Cofer against Morton for $210,000 damages and $46,257.30 prejudgment interest. Morton and Iowa Mutual Insurance Company appealed the judgment against Morton and, on December 2, 1986, the Tenth Circuit Court of Appeals affirmed the judgment against Morton.

10. During the pendency of the appeal Eddie Moye Cofer died on June 20, 1986. After the case was remanded from the Tenth Circuit Court of Appeals, the present Plaintiff, Thomas W. Cofer, Administrator of the Estate of Eddie Moye Cofer, deceased, was substituted as Plaintiff on April 29, 1988.

## I.

█ Rights of recovery under the Uninsured Motorist Act are governed by the statute in effect on the date of issuance or last renewal of the policy against which an uninsured motorist claim is made. *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okla. 1983). On September 17, 1978 (the policy issuance date) subsection (C) of 36 O.S. § 3636 read as follows:

(C) For the purposes of this coverage the term "uninsured motor vehicle," shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency *or whose liability insurer for any reason either cannot or is not legally required to accord at least the per person coverage limits with respect to the legal liability of its insured, applicable to any injured party under any uninsured motorist coverage covering such injured party.* (emphasis added).

This Court has construed the emphasized portion of the statute to mean that a tortfeasor's vehicle is uninsured if the per person limit of liability of the injured party's uninsured motorist coverage is greater than the per person limit of liability of the tortfeasor's liability coverage. *Mid-Continent Cas. Co. v. Theus*, 592 P.2d 519 (Okla. 1979). Defendant Iowa Mutual Insurance Company (hereinafter "IM") argues that, in the present case, the tortfeasor's vehicle was not uninsured as it was covered by a $10,000 per person limit of liability for bodily injury coverage while the injured party's coverage only afforded a per person limit of liability for uninsured motorist coverage of $5,000. The plaintiff takes the position that the tortfeasor's vehicle was uninsured because the policy containing the $5000 per person limit of liability for uninsured motorist coverage listed 12 vehicles for which separate premiums had been paid. Therefore the stacked limits of liability for uninsured motorist coverage would be $60,000 which is greater than the tortfeasor's $10,-000 per person limit of liability for bodily injury coverage.

IM relies heavily on this Court's holding in *Heavner v. Farmers Ins. Co.*, 663 P.2d 730 (Okla.1983), where the tortfeasor's $20,000 bodily injury liability coverage was divided among the passengers with Heavner receiving only $4500. In analyzing Heavner's subsequent claims (under the 1976 statute) against two uninsured motorist coverage carriers, not only did the Court treat each policy separately in determining whether the tortfeasor's vehicle was uninsured, but it rejected Heavner's contention that the bodily injury liability and the uninsured motorist coverage be stacked. Prior to *Heavner*, the Court had allowed (under the 1968 statute) stacking of uninsured motorist coverage under two policies from one carrier where two separate premiums had been paid. *Keel v. MFA Insurance Company*, 553 P.2d 153 (Okla.1976). In construing the 1979 version of § 3636(A) and (B) (which provisions were identical to the 1976 versions) the Court continued to apply the rationale of *Keel* and stacked the limits of uninsured motorist coverage where one policy covered three vehicles for which three premiums had been paid. *Richardson v. Allstate Ins. Co.*, 619 P.2d 594 (Okla. 1980). Under the current version of § 3636, this Court has reiterated its commitment to allow stacking of uninsured motorist coverage in various situations. See

*State Farm Mut. Auto. Ins. Co. v. Wendt,* 708 P.2d 581 (Okla.1985) and *Lake v. Wright,* 657 P.2d 643 (Okla.1982).

▮ Any decision reached in answer to the first certified question therefore must focus on the legislative intent evidenced in the statute and our previous judicial interpretations of the statute. Clearly the legislature did not intend that an injured party whose claims equal or exceed the aggregate limits of all available policies be placed in a better position if the tortfeasor had carried no insurance. In light of this the present case is similar to the facts in *Richardson* in that only one carrier and one policy with multiple vehicles are involved. Separate premiums have been paid for each of the twelve vehicles covered by the policy. The payment of these premiums by the plaintiff guarantees that the extent of coverage available to the plaintiff must be the combined limits of liability for all 12 vehicles, or $60,000. *Keel,* supra. When determining whether the tortfeasor's vehicle is uninsured the total amount of uninsured motorist coverage for which the insured has paid must be compared with the total liability coverage of the tortfeasor. Using a figure less than the stacked limits of uninsured motorist coverage would keep the insured from receiving the full benefit of the insurance contract for which he has paid and on which he has relied. *Richardson,* supra.

▮ In answering the first certified question we hold that under Okla.Stat. tit 36, § 3636(C), as amended effective March 16, 1976, and prior to its amendment effective May 16, 1979, the determination that a vehicle is an "uninsured motor vehicle" is made by comparing the per person limit of liability of the tortfeasor's bodily injury liability insurance coverage to the "stacked" limits of liability of the insured's uninsured motorist coverage. The "stacked" limits of liability are to be calculated by multiplying the per person limit of liability of the insured's uninsured motorist coverage by the number of vehicles insured under the policy for which a separate premium for uninsured motorist coverage is charged.

## II.

▮ The 1976 version of 36 O.S. § 3636(B) is the applicable statute to be construed in answering the second question. The statutory language reads in pertinent part as follows:

(B) The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes, as the same may be hereafter amended, *provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.* (emphasis added)

This Court has previously addressed the issue of the necessity of an offer by an insured of the statutorily required amount of uninsured motorist coverage, however, the question here focuses on whether or not an insurer has a duty to offer an insured the increased limits of uninsured motorist coverage that may then be purchased by the insured if desired.

The intent of the legislature as mandated in § 3636(F) is to have a statutory minimum of uninsured motorist coverage in all automobile liability insurance policies unless these minimum amounts are rejected in writing by a named insured. At the same time a written rejection is not required if the insured does not exercise the option to purchase increased limits of liability. *Prideaux v. Allstate Ins. Co.,* 753 P.2d 935 (Okla.App.1987) (cert. denied 4–26–88). We have held that to allow the excess limits of liability to be read into an insurance policy by operation of law due to no written rejection in a situation where

the insureds had been notified of the extra coverage but never acted upon the notice goes beyond the statutory mandate. *Mann v. Farmers Ins. Co. Inc.*, 761 P.2d 460 (Okla.1988). Where the issue of the sufficiency of an insurer's offer of basic uninsured motorist coverage has been raised we have found that the insurer has no contractual duty to explain the terms of its offer nor must it list the advantages and disadvantages of providing uninsured motorist coverage. *Silver v. Slusher*, 770 P.2d 878 (Okla.1988). Further, the failure of an insurer to obtain a written rejection as to uninsured motorist coverage where a company obtained excess liability coverage in the form of an "umbrella" liability policy does not fall within the scope of the uninsured motorist provisions. *Moser v. Liberty Mut. Ins. Co.*, 731 P.2d 406 (Okla.1986).

The present fact situation is comprised of several interesting components. First of all, it is assumed that no express offer of the increased limits of liability was made by IM. Secondly, it is stipulated by the parties that one of the named insureds was "aware" of the availability of the excess coverage but "decided" to buy the minimum amount of uninsured motorist coverage. Finally, the only argument made by the plaintiff as to whether or not the rejection was informed is that the very fact that the insured rejected excess uninsured motorist coverge "in an amount fifty (50) times as great as the protection purchased for himself and family members" indicates that this rejection was not an informed, intelligent decision. Rather, plaintiff urges this Court to disregard the insured's rejection and concentrate solely on the fact that no offer was made by IM. This lack of an offer, plaintiff contends, should result in the limits of liability of the uninsured motorist coverage being raised by operation of law to the limits of plaintiff's bodily injury liability coverage. We cannot agree with this position.

All of the aforementioned decisions relating to the interpretation of § 3636 have consistently attempted to implement the spirit of the entire statute as the legislature intended it. While the statute requires that an insurer offer increased limits of coverage, the purpose of requiring this offer is so that information will be dispensed to the insured. After the information has been received by the insured a rejection of uninsured motorist coverage can be made. In the majority of cases the insured must rely on insurers to notify them of their statutory right to reject the coverage. However, while plaintiff argues that an offer is absolutely necessary to have an informed decision to reject, we find that an insured may be informed from other sources as to the option to purchase increased limits of uninsured motorist coverage and a decision to accept or reject may have no effect upon an insurer's offer or failure to offer. Thus, if an insured selects the minimum uninsured motorist coverage and is aware that increased limits of coverage may be purchased if desired but chooses not to purchase these increased limits then the requirement of an offer by an insurer is meaningless and of no consequence.

We hold that under Okla.Stat. tit. 36, § 3636(B), as amended effective March 16, 1976, the failure of an insurer providing uninsured motorist coverage to offer to the insured increased limits of liability for uninsured motorist coverage, not to exceed the limits of liability provided in the insured's policy for bodily injury liability insurance coverage, where the named insured is aware of the availability of increased limits of liability for uninsured motorist coverage and chooses to purchase uninsured motorist coverage with the minimum limits of liability provided for by law has no effect on the insured's rejection.

CERTIFIED QUESTIONS ANSWERED.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, SIMMS, DOOLIN and SUMMERS, JJ., concur.

ALMA WILSON and KAUGER, JJ., concur in Part I, dissent from Part II.

ALMA WILSON, Justice, dissenting in Part II:

The question is simply whether an insurer has a duty to offer an insured increased

limits of uninsured motorist coverage and if so what is the legal effect of the insurer's failure to make the offer. 36 O.S. § 3636(B) plainly provides that "... increased limits of liability *shall be offered* and purchased if desired...." [emphasis added]. The legislature mandates the duty to make an offer. Our judicial function is to apply the statutory language and it is fundamental that the word "shall" is a word of command operating to impose a mandatory duty.

The legal effect of the insurer's failure to make an offer results in a reformation of the policy and an increase in available uninsured motorist coverage to an amount equal to the liability limits available under the policy. In this Court's recent decision in *Moon v. Guarantee Ins. Co.*, 764 P.2d 1331, 1335 (Okla.1988) we said:

> Accordingly, uninsured motorist coverage is required to be *offered by written provision* within or supplemental to an original policy, *(and if not so "offered", then such is written into the policy by operation of law)*, and must likewise thereafter be waived by *written rejection*. Thus, the burden of proof is upon the insurer to come forward with a written rejection in order to relieve the insurer from its duty to provide the statutory uninsured motorist coverage. *Allegations of oral offers of uninsured motorist coverage fall short of the tendor of proof required by 36 O.S.1981 § 3636, for there is but one statutorily sanctioned method by which the mandatory uninsured motorist coverage provided for persons insured under a liability policy may thereafter be rejected.* [emphasis added.]

Although *Moon* is distinguishable from the case at bar in that it did not address the increased limits feature of § 3636(B), I deem it controlling. In my dissenting opinion in *Mann v. Farmers Ins. Co.*, 761 P.2d 460, 466 (Okla.1988), I reiterate that Subsection F of § 3636 which provides for written rejection of uninsured motorist coverage refers to *all* of Subsection B of § 3636 (i.e. the increased limits) and not just the portion of Subsection B requiring that the policy coverage be the minimum required by state law.

The case at bar is distinguishable from the authority relied upon by the majority. For example, in *Mann v. Farmers Ins. Co.*, 761 P.2d at 460, the insurer made a sufficient offer of increased limits of uninsured motorist coverage whereas in the instant case no offer was made. Furthermore, the case at bar involves a primary policy whereas this Court in *Moser v. Liberty Mutual Ins. Co.*, 731 P.2d 406 (Okla.1986) dealt with the applicability of the requirements of § 3636 to umbrella liability policies.

To reiterate my dissent in *Moser* at 410–11 "[t]his Court has traditionally held that an unambiguous statute should be construed in a literal way giving words their ordinary, commonly understood meaning." It is hard to imagine words plainer than "increased limits of liability shall be offered." Accordingly, under the provisions of our own statute, there is neither reason nor room for statutory construction. The statute unambiguously mandates the duty to offer increased limits of liability. The failure to do so renders the insurer responsible for uninsured motorist coverage in an amount equal to the bodily injury liability contained in the policy by operation of law. The legislated mandated duty is not discharged by the insured's nebulous awareness of the availability of increased coverage. This Court should not substitute its wisdom for that of the legislature. I therefore dissent and adhere to the plain meaning of the statute.

I have been authorized to state that KAUGER, J. joins in this dissenting in part II.