1997 OK 104

**Larry Shawn KINDER, Appellee,**

v.

**OKLAHOMA FARMERS UNION MUTUAL INSURANCE COMPANY, Appellant.**

**No. 81333.**

Supreme Court of Oklahoma.

July 15, 1997.

As Corrected July 17, 1997.

Kenneth Alan Brokaw, Day, Edwards, Federman, Propester & Christensen, P.C., Oklahoma City, for Appellant, Oklahoma Farmers Union Mutual Insurance.

George Hanks, Oklahoma City, for Appellee, Larry Shawn Kinder.

HARGRAVE, Justice.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶ 1 Kinder, age nineteen and living at home with his parents, was involved in a vehicular accident on June 12, 1988. His

parents had insurance with Oklahoma Farmers Union (OFU) on six (6) vehicles at the time of the accident. Kinder was covered under the insurance of his parents and on the vehicle that he was driving at the time. Initially, the Kinders had one (1) policy covering three (3) vehicles and a limitation clause regarding uninsured-motorist coverage with a limit of $10,000.00 per person and $20,000 per accident. Later, the Kinders added three (3) more vehicles. On the original application, Catherine Kinder requested and purchased liability coverage for $25,000.00 per person, $50,000.00 per accident. She applied for $10,000.00 per person, $20,000.00 per accident uninsured motorist coverage. Before the date of the accident involving Larry Sean Kinder on June 12, 1988, OFU had voluntarily and unilaterally increased the uninsured motorist coverage on plaintiff's policy from $10,000.00 per person, $20,000.00 per accident to $25,000.00 per person, $50,-000.00 per accident. Kinder contended he was entitled to "stack" the UM coverage for each vehicle covered under the policy, and made a claim against the insurance company for benefits for $150,000.00. The insurance company contended that there was only one (1) premium charged for UM coverage on the six (6) vehicles and, therefore, Kinder could recover only $25,000.00 on the uninsured motorist policy.

¶ 2 The Oklahoma Court of Civil Appeals noted several significant factors in *Kinder I*,[1] including: (1) The Kinders initially insured only three [3] vehicles and opted for UM coverage of $10,000.00 per person and $20,-000.00 per accident. (This acceptance section of UM coverage informed the Kinders that it was not stackable.); (2) After that, the Kinders bought additional insurance to cover the three additional vehicles and OFU unilaterally increased the UM coverage to $25,000.00 per person and $50,000.00 per accident; (3) Although the "Continuation Certificate" issued with the additional coverage stated that "the law requires all automobile liability policies written in Oklahoma to provide uninsured motorist coverage unless rejected in writing by the policy holder", the Court of Civil Appeals stated: "there was no

written evidence of the Kinders' choice of the increased limits of UM coverage" for the new policies for the additional vehicles. The UM carrier also admits that the Kinders, after their purchase, received the "Continuation Certificate" referring to the UM, of additional insurance; and (4) That "... at the time the changes were made, that their UM coverage would be limited to 25/50, because only one premium for the UM coverage was being collected."

¶ 3 The Court of Civil Appeals then reversed and remanded to the trial court citing this Court's decisions in *Beauchamp v. Southwestern National Insurance Company,* 1987 OK 111, 746 P.2d 673; *Scott v. Cimarron Insurance Company,* 1989 OK 26, 774 P.2d 456; and *Lake v. Wright,* 1982 OK 98, 657 P.2d 643. The Court of Civil Appeals noted that under these decisions they must give the person buying additional insurance absolutely the choice to purchase UM insurance. The agreement must reflect the intent of the insureds about how much uninsured motorist coverage the buyer wants, and that an insurance company can limit the UM benefits under a policy with multiple vehicles insured if they give proper notice adequately informing of the insured that only one premium is charged despite the number of vehicles covered. However, the "great significance" is placed on the fact about whether the insured had notice and made an informed choice.

¶ 4 The Court of Civil Appeals in *Kinder I* reversed and remanded holding at 1991 OK CIV APP 53, 813 P.2d 546, 549:

A policy which places additional vehicles on a policy is considered a new policy; increased limits of UM coverage must be re-offered and waivers under the previous policy are ineffective. See *Beauchamp v. Southwestern National Insurance Company,* 746 P.2d 673 (Okla.1987).

The Court of Civil Appeals in *Kinder I* further held 813 P.2d at 549:

In the instant case, Appellant's parents filed affidavits stating that they were not given the option of paying additional premiums for increased limits of UM cover-

**1.** *Kinder v. Oklahoma Farmers Union Mutual,*     1991 OK CIV APP 53, 813 P.2d 546.

age. Appellee has not provided us with evidentiary materials showing that Appellant's parents were given the choice ...

Under *Scott, supra,* the insured was held to the lower limits and was unable to stack the UM coverage on multiple vehicles because the Supreme Court found the insured had made informed choices about the coverage selected. We do not have the same indication from the evidentiary materials filed with the trial court in the present case....

There are issues, and material facts as to whether Appellant's parent understood at the time of the changes in the policy that their UM coverage would be limited to $25,000.00 per person and $50,000.00 per accident, despite the inclusion of six vehicles on the policy. Summary Judgment was improper.

¶ 5 On remand, the trial court made the following finding:

*JOURNAL ENTRY OF JUDGMENT*

3. That it is very clear to this Court that [1] no increased limits of uninsured motorist coverage were ever offered (after the initial offer) and [2] no written rejection was ever presented

¶ 6 The trial court then entered judgment for the insureds because the insurance company had not offered additional UM coverage when the Kinders bought additional insurance for the three vehicles and, since the insurance company did not have a written rejection of UM after such an offer, that operation of law automatically insured the Kinders.

¶ 7 The current appeal arises as the uninsured-motorist carrier appealed and the Court of Civil Appeals reversed and remanded the judgment of the trial court. The Court of Civil Appeals held:

The trial court must have determined from our earlier opinion that the absence of a written rejection of increased UM coverage [the stacking privilege] causes the insured to have the right to stack the coverages. This was not our holding. Moreover, we have never held that a written rejection by an insured is required to prevent the insured from having the right

to stack UM coverages in a policy covering multiple vehicles. Additionally, we have not held it is contrary to public policy to preclude stacking when it is shown the insured chose the lesser benefits.

¶ 8 The Court of Civil Appeals further stated that there are conflicting allegations whether the Kinders understood that when they insured three additional vehicles that they were still limited to the uninsured-motorist coverage for one vehicle under the limitation clause. The trial court determined in its journal entry, after reviewing the record, "it is very clear to this Court that no increased limits of uninsured motorist coverage were ever offered."

¶ 9 Now both parties seek certiorari contending that the Court of Civil Appeals decision is in error. The UM insurance company contends that the Court of Civil Appeals is inconsistent with applicable law. It contends that since the insurance policy provided for only one premium for UM coverage, despite how many vehicles are insured for liability, that there is no way it could be liable for failure to offer additional insurance.

¶ 10 Title 36 O.S.1991, § 3636 mandates that every automobile liability insurance policy issued in this state provide UM coverage, unless the insured rejects it in writing. Subsection 3636(B) specifically provides that, if selected by the insured, uninsured motorist:

[c]overage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 ...; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured ...

The bodily injury liability limits prescribed by 47 O.S.1991, § 7–204 are $10,000.00 per person and $20,000.00 per accident (10/20).

¶ 11 When they originally obtained their policy, the Kinders had the option under § 3636 of waiving UM coverage entirely or selecting UM coverage in amounts between 10/20 and the limits of their bodily injury liability coverage. As previously stated, the Kinders had one (1) policy covering three (3)

vehicles and a limitation clause regarding UM coverage with a limit of $10,000.00 per person and $20,000 per accident. Later, the Kinders added three (3) more vehicles. On the original application, Catherine Kinder requested and purchased liability coverage for $25,000.00 per person, $50,000.00 per accident. She applied for $10,000.00 per person, $20,000.00 per accident uninsured motorist coverage.

¶ 12 Before the date of the accident involving Larry Sean Kinder on June 12, 1988, OFU voluntarily increased the uninsured motorist coverage on plaintiff's policy from $10,000.00 per person, $20,000.00 per accident to $25,000.00 per person, $50,000.00 per accident. The Kinders therefore obtained the maximum amount of UM permitted. The original OFU policy executed by Catherine Kinders on February 21, 1986 plainly stated that she requested uninsured motorist coverage in the amount of 10/20, and that she understood that: "despite the number of vehicles ... only one premium would be charged ... therefore only one limit of protection applies to any claim." Catherine Kinders signed this. Additionally, the policy declaration presented to the Kinders, after the request for a change in coverage, plainly states:

> Uninsured motorist coverage with limits of 25/50 (000) is provided on this policy as requested by the applicant. The premium for this coverage is not based on the number of vehicles on this policy.

■ ¶ 13 We recognize that the addition of a vehicle to an existing policy constitutes a new policy distinct from the original and, as such, § 3636 requires that UM coverage be offered in conjunction with the coverage of the new vehicle. *Beauchamp v. Southwestern Nat'l Ins. Co.*, 1987 OK 111, 746 P.2d 673, 676, 36 O.S.1991, § 3636(G)(2).

■ ¶ 14 The Kinders claim that Oklahoma Farmers Union was legally obligated to offer them stackable UM coverage when they obtained the new policy covering the additional cars is unfounded. Oklahoma law does not require an insurer to offer stackable UM coverage when a new vehicle is added to an existing insurance policy. We find *Withrow v. Pickard,* 1995 OK 120 ¶ 10, 905 P.2d

800 (Okla.1995) to be dispositive in the present issue.

¶ 15 In *Withrow* the plaintiff urged that the insurer was required to offer stackable UM coverage, and that by failing to do so UM coverage was included on three different vehicles by operation of law. This Court disagreed, holding that nothing in our statutes requires an insurer to offer stackable UM coverage in a single insurance policy which covers multiple vehicles. Since the plaintiff had obtained the maximum amount of UM coverage permitted, (i.e., that amount equal to his liability limits), since he had paid only one premium, and since the policy plainly stated that the UM coverage was not based on the number of vehicles, the plaintiff was not entitled to stack his UM coverage. We noted that the holding was consistent with *Scott v. Cimarron Ins. Co.,* 1989 OK 26, 774 P.2d 456. See also, *Wilson v. Allstate Ins. Co.* 1996 OK 22, 912 P.2d 345; *Breakfield v. Oklahoma Farmers Union Mutual Ins. Co.,* 1995 OK 139, 910 P.2d 991.

■ 16 Although the trial court stated in its journal entry, after reviewing the record, "it is very clear to this Court that no increased limits of uninsured motorist coverage were ever offered." It is clear from the record that OFU increased the amount of coverage from 10/20 up to 25/50, that being the same as the bodily injury coverage and hence, the most allowed by Oklahoma law. This increase in UM coverage was not rejected by the Kinders. This information coupled with the plain language on the policy statement that the premium for coverage of uninsured motorist was not based on the number of cars covered by the policy, shows that the Kinders were on notice as to the nature of the contract. Since payment of $25,000.00 has already been made to Larry Shawn Kinder, this case is reversed and remanded to the trial court with instructions to enter judgment for appellant.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE TRIAL COURT REVERSED AND REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT FOR APPELLANT.**

KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, SIMMS, OPALA and WATT, JJ., concur.

ALMA WILSON, J., concurs in part and dissents in part.