2005 OK 35

**Pam and Dennis SPEARS, as Guardians and Next of Kin of Nathan Spears, Plaintiffs,**

v.

**GLENS FALLS INSURANCE COMPANY, Defendant.**

**No. 101,655.**

Supreme Court of Oklahoma.

May 17, 2005.

Rex K. Travis, Oklahoma City, OK, for Plaintiffs.

Richard J. Harris, Sarah J. Glick, Oklahoma City, OK, for Defendant.

KAUGER, J.:

¶ 1 The question certified [1] asks this Court to determine whether the defendant, Glens Falls Insurance Company (Glens Falls/insurer), was required to give the plaintiffs, Pam and Dennis Spears (Spears/insureds), pre-policy notification that stacking of uninsured/underinsured motorist (UM/UIM) insurance was prohibited by the insurance contract. The parties stipulated that: 1) the original UM/UIM coverage form presented to the insureds conformed with the requirements of 36 O.S. Supp.2004 § 3636; [2] 2) the policy was renewed annually between 1993 and 2003 with the insureds receiving a cover-

1. Title 20 O.S.2001 § 1602 provides:
   "Power to Answer. The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."

2. Title 36 O.S. Supp.2004 § 3636 provides in pertinent part:
   "A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
   B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured. The uninsured motorist coverage shall be upon a form approved by the Insurance Commissioner as otherwise provided in the Insurance Code ...
   I. Effective for forms required before April 1, 2005, the offer of the coverage required by subsection B of this section shall be in the following form which shall be filed with and approved by the Insurance Commissioner.

The form shall be provided to the proposed insured in writing separately from the application and shall read substantially as follows:
OKLAHOMA UNINSURED MOTORIST COVERAGE LAW
   Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage. THE LAW REQUIRES U.S. TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE. YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.
Uninsured Motorist coverage, unless otherwise provided in your policy, pays for bodily injury damages to you, members of your family who 'live with you, and other people riding in your car who are injured by: (1) an uninsured motorist, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for bodily injury damages to any insured person. Uninsured Motorist coverage, unless otherwise provided in your policy, protects you and family members who live with you while riding in any vehicle or while a pedestrian.
You may make one of four choices about Uninsured Motorist Coverage:
   1. You may buy Uninsured Motorist coverage equal to your bodily injury liability coverage for $_____ for _____ months.
   2. You may buy Uninsured Motorist coverage in the amount or $10,000.00 for each person injured, not to exceed $20,000.000 for two or more persons injured in one occurrence (the smallest coverage which Oklahoma law allows) for $_____ for _____ months.
   3. You may buy Uninsured Motorist coverage in an amount less than your bodily injury liability coverage but more than the minimum levels.
   4. You may reject Uninsured Motorist coverage.
Please indicate below what Uninsured Motorist coverage you want:
   _____ I want the same amount of Uninsured Motorist coverage as my bodily injury liability coverage.

age summary at each renewal; 3) although the policy covered three vehicles, only one premium for UM/UIM coverage was charged; and 4) the UM/UIM coverage endorsement to the policy provided in pertinent part:

> "... The limit of liability shown in the Coverage Summary for each person for Uninsured Motorist Coverage is our maximum limit of liability for all damages.... This is the most we will pay regardless of the number of: ... Vehicles insured by this or any other policy issued by us or others ..."

Under these facts and pursuant to *Silver v. Slusher*, 1988 OK 53, 770 P.2d 878, *cert. denied*, 493 U.S. 817, 110 S.Ct. ·70, 107 L.Ed.2d 37 (1989) and *Cofer v. Morton*, 1989 OK 159, 784 P.2d 67, acknowledging that insurers need not give insureds extensive pre-policy explanations concerning UM/UIM coverage alternatives, insurers need not notify, prior to policy issuance, insureds that UM/UIM coverage may not be stacked.

## STIPULATED FACTS

¶ 2 In January, 1993, the Spears selected UM/UIM coverage equal to their bodily injury liability limits on a form provided by the insurer in conformance with the legislatively imposed requirements.[3] The insureds signed a second UM/UIM notice and selection form in March of 1996, and again chose the maximum statutory coverage limit. The policy was renewed annually with Glens Falls underwriting the policy beginning in 2001. The most recent policy renewal occurred on January 3, 2003. At each renewal, the insureds were given copies of the policy including a coverage summary and all endorsements. The policy provides bodily injury liability

> _____ I want minimum Uninsured Motorist coverage ($10,000.00 per person/$20,000.00 per occurrence).
> _____ I want Uninsured Motorist coverage in the following amount $ _____ per person/$ _____ per occurrence.
> _____ I want to reject Uninsured Motorist coverage.
>
> ———
> Proposed Insured
> THIS FORM IS NOT A PART OF YOUR POLICY AND DOES NOT PROVIDE COVERAGE...."

coverage in the amount of $100,000 per person and $300,000 per accident.

¶ 3 Although the policy indicates that there are three vehicles covered, a single premium of $252.00 was charged for UM/UIM coverage which is listed separately from all other vehicle premiums. Furthermore, all other charges under the policy are assigned on a per-vehicle basis. Finally, the inclusion of multiple vehicles under the UM/UIM coverage did not alter the premium or result in increased charges.

¶ 4 The insurance policy contained the following provision limiting UM/UIM coverage:

> "... LIMIT OF LIABILITY
>
> 1. The limit of liability shown in the Coverage Summary for each person for Uninsured Motorists Coverage' [sic] is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of *bodily injury* sustained by any one person in any one *motor vehicle accident*. 'Bodily injury' sustained by any one person' includes all injury and damage to others resulting from this *bodily injury*.

Subject to this limit for each person, the limit of liability shown in the Coverage Summary for each *accident* for 'Uninsured Motorist' coverage is our maximum limit of liability for all damages for *bodily injury* resulting from any one *motor vehicle accident*.

This [sic] most we will pay regardless of the number of:

a.  *Covered persons* ...

c.  Vehicles involved in an *accident* or shown in the Coverage Summary ...

Although § 3636 has been amended since the insureds originally sought UM/UIM coverage, references are to the current statutory scheme which remains substantially similar to its 1990 counterpart. It should also be noted that the current statutory scheme requires that UM/UIM coverage offered after April 1, 2005, contain minimum UM/UIM coverage of $25,000.00 per person/$50,000.00 per occurrence.

3.  *Id.*

d. Vehicles insured by this or any other policy issued by us or others . . ." [Emphasis in original.] [4]

¶ 5 The insurer did not advise the insureds, prior to policy issuance, that they were precluded from stacking their UM/UIM coverage. The insureds' son, Nathan Spears, was injured in an accident with an uninsured motorist on December 15, 2003. Arguing that the insureds were entitled to only a single recovery for UM/UIM coverage, the insurer paid the insureds $100,000. The insureds asserted their entitlement to stack the UM/UIM coverage of their three vehicles and sought a recovery of $300,000.

¶ 6 The Spears sued Glens Falls in Cleveland County District Court filing the petition on May 20, 2004. The insurer was successful in getting the cause removed to federal court on diversity grounds. Once the cause was in the federal system, the insurer answered on July 9, 2004, and filed a counterclaim for declaratory judgment seeking costs and a finding that it fulfilled all its obligations to the insureds through its $100,000.00 payment. On September 30, 2004, the insureds filed a motion for summary judgment which the insurers countered on October 1, 2004.

¶ 7 Recognizing that state law is determinative of the stacking issue and that this Court has not addressed the precise issue presented, the federal court certified the question to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.2001 § 1601 *et seq.* on January 7, 2005. We set a briefing cycle which was completed on February 25, 2005.

**¶ 8 PURSUANT TO THE TEACHINGS OF *SILVER v. SLUSHER* AND *COFER v. MORTON* AND, UNDER THE FACTS PRESENTED, AN INSURANCE COMPANY NEED NOT PROVIDE INSUREDS WITH PRE–POLICY NOTICE THAT STACKING OF UM/UIM IS PROHIBITED BY THE INSURANCE CONTRACT.**

¶ 9 Although the insureds recognize that our jurisprudence provides that an insurer may limit UM/UIM coverage to a single recovery where only one premium is charged for multiple vehicles, the Spears argue that before issuance of the policy, Glens Falls was required to present them with all options for UM/UIM coverage—including notice that stacking was prohibited. The insurer asserts that it was not required to provide stackable UM/UIM coverage. Furthermore, Glens Falls contends that when only one UM/UIM premium is charged for multiple vehicles and when the policy language prohibits stacking, multiple recovery is prohibited. Finally, the insurer urges that *Silver v. Slusher,* 1988 OK 53, 770 P.2d 878, *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989)—holding that an insurer has no affirmative duty, either contractually or statutorily, to provide an explanation of UM/UIM motorist coverage to insureds as an indispensable precondition for securing an effective rejection of UM/UIM coverage, is instructive. We agree.

¶ 10 The insureds find support in *Scott v. Cimarron Ins. Co., Inc.,* 1989 OK 26, 774 P.2d 456 and *Withrow v. Pickard,* 1995 OK 120, 905 P.2d 800. Additionally, they rely heavily on two non-precedential opinions [5] released for publication by the Court of Civil Appeals, *Mid–Continent Group v. Henry,* 2003 OK CIV APP 46, 69 P.3d 1216 and *Kinder v. Oklahoma Farmers Union Mutual Ins. Co. (Kinder I),* 1991 OK CIV APP 53, 813 P.2d 546.

---

4. The policy contains another limitation of liability clause providing in pertinent part:
   " . . . e. TWO OR MORE MOTOR VEHICLE POLICIES.
   If this policy and any other *motor vehicle* policy issued to you by us apply to the same *accident,* the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy. . . ." [Emphasis in original.]

5. Opinions released by the Court of Civil Appeals, are persuasive only, and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1; 20 O.S.2001 § 30.5; 20 O.S.2001 § 30.14.

¶ 11 In *Scott* and *Withrow,* supra, we held that stacking was not allowed under policies when only one premium was charged for UM/UIM coverage. Nevertheless, the insureds assert these opinions support their position because, in both instances, the insured was given pre-policy notification that stacking was prohibited by language included in the application form.

¶ 12 We agree with the insureds that inclusion of such pre-policy information is the better practice and would ensure a determination that the contractual expectation of the parties was for singular UM/UIM coverage. However, neither of the opinions strengthens the insureds' position.

¶ 13 *Withrow* specifically determined that insurance companies were under no obligation to offer stackable UM/UIM coverage [6] and rejected contentions that because the insured was not offered stackable coverage when a third car was added to the policy, it arose by operation of law. Furthermore, the *Withrow* Court reiterated that once the insurer had provided the insured with the statutorily approved form, as Glen Falls did here, it had done all the law required.[7] Finally, *Withrow* characterizes, as a crucial factor in determining reasonable expectations of

the insured, the payment of multiple premiums in consideration of whether stacking is allowed.[8] This reasoning comports with *Max True Plastering Co. v. United States Fidelity & Guaranty Co.,* 1996 OK 28, 912 P.2d 861, in which we emphasized that stacking of UM/UIM coverage was allowable when such coverage was within the reasonable expectations of the parties, *i.e.* when separate premiums were paid on a series of vehicles covered by a single policy. Here, it is undisputed that the Spears paid only one premium for multiple vehicle UM/UIM protection.

¶ 14 Like *Withrow, Scott* does not bolster the insureds' arguments. In *Scott,* the Court recognized that, without exception, the issue of stackable coverage turned on whether a single or separate premiums had been charged for multiple vehicular coverage.[9] Here, it is uncontested that a single charge was made for UM/UIM coverage and that the charge did not vary with the addition of vehicles to the policy—there was one premium paid for UM/UIM coverage on all the Spears' vehicles.

¶ 15 In *Kinder v. Oklahoma Farmers Union Mutual Ins. Co. (Kinder I),* 1991 OK

6. *Withrow v. Pickard,* 1995 OK 120, ¶ 20, 905 P.2d 800.

7. *Id.*

8. *Withrow v. Pickard,* see note 6 at ¶ 15, supra.

9. *Kinder v. Oklahoma Farmers Union Mutual Ins. Co.,* 1997 OK 104, ¶ 16, 943 P.2d 617 [Where maximum statutory limits of liability are offered and plain language of policy provides there shall be no stacking, insureds were on notice as to the nature of the contract.]; *Wilson v. Allstate Ins. Co.,* 1996 OK 22, ¶ 8, 912 P.2d 345 [Insurer required to stack coverage when it has charged and collected separate premiums for coverage.]; *Scott v. Cimarron Ins. Co., Inc.,* 1989 OK 26, ¶ 5, 774 P.2d 456 [Crucial factor in stacking cases is whether multiple premiums are paid.]; *Withrow v. Pickard,* see note 6, supra [Only single coverage allowed when one premium charged for multiple vehicles.]; *Shepard v. Farmers Ins. Co., Inc.,* 1983 OK 103, ¶ 8, 678 P.2d 250 [Only stack with payment of multiple premiums.]; *Lake v. Wright,* 1982 OK 98, ¶ 17, 657 P.2d 643 [Insured allowed to stack where multiple premiums were paid for UM/UIM coverage.]; *Richardson v. Allstate Ins. Co.,* 1980 OK 157, ¶ 13, 619 P.2d 594 [Multiple coverage allowed where multiple premiums

paid.]; *Keel v. MFA Ins. Co.,* 1976 OK 86, ¶ 12, 553 P.2d 153 [Additional coverage allowed when increased premiums paid.]; *Dodd v. Allstate Ins. Co.,* 2004 OK CIV APP 82, ¶ 13, 99 P.3d 1219 [Two recoveries allowed where two premiums paid although policy covered additional vehicles.]; *Kramer v. Allstate Ins. Co.,* 1994 OK CIV APP 146, ¶ 5, 909 P.2d 128 [Stacking allowed where insured paid double rate for multi-car coverage.]; *Coker v. Allstate Ins. Co.,* 1994 OK CIV APP 62, ¶ 8, 877 P.2d 1175 [Limitation to one recovery not against public policy when only one premium is charged.]; *Davis v. Equity Fire & Casualty Co.,* 1992 OK CIV APP 171, ¶ 3, 852 P.2d 780 [Single premium for UM/UIM coverage, regardless of number of vehicles insured, revealed a contractual expectation to have singular protection.]. See also, *Willhite v. Allstate Ins. Co.,* 910 F.Supp. 549, 551 (W.D.Okla.1994) [Stacking allowed where only one premium charged which reflected a premium almost double single-vehicle coverage.]; *Gordon v. Gordon,* 2002 OK 5, ¶ 14, 41 P.3d 391 [Clause limiting liability coverage to the maximum limits provided by the policy regardless of the number of vehicles insured was valid.]; *Simpson v. Farmers Ins. Co., Inc.,* 1999 OK 51, ¶ 16, 981 P.2d 1262 [Neither policy language nor public policy required stacking of medical expense coverage.].

CIV APP 53, 813 P.2d 546,[10] the Court of Civil Appeals determined that genuine issues of material fact existed concerning whether the insureds understood that UM/UIM coverage was limited to one recovery where the policy covered several vehicles. The cause was returned to the trial court for a determination of the factual issue. However, when the cause was appealed the second time, this Court held in *Kinder v. Oklahoma Farmers Union Mutual Ins. Co. (Kinder II)*, 1997 OK 104, 943 P.2d 617, that policy language indicating that the premium for UM/UIM coverage was not based on the number of cars covered put the insured on notice that UM/UIM coverage was not subject to stacking.

¶ 16 *Mid–Continent Group v. Henry*, 2003 OK CIV APP 46, ¶ 10, 69 P.3d 1216 holds that, where UM/UIM coverage is imputed as a matter of law, and the insurer has not given any notice to the insured prior to the issuance of the policy of its intent to avoid stacking, there can be no informed choice or intent to agree that uninsured motorist coverage on multiple vehicles will not be stacked.[11] *Henry* is distinguishable on its facts from both *Withrow* and *Scott* and from the situation presented here.

¶ 17 In *Henry*, the insurer did not present the insured with any written election form or other notice concerning uninsured motorist coverage before issuing a new policy. Here, and in *Withrow* and *Scott*, each insured executed an application form containing UM/UIM coverage options. Furthermore, the appellate court in *Henry* ignored the teachings of *Silver v. Slusher*, 1988 OK 53, 770 P.2d 878, *cert. denied*, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989) and *Cofer v. Mor-*

*ton*, 1989 OK 159, 784 P.2d 67, regarding the insurers limited notice duties.

¶ 18 In *Silver*, we held that an insurer had no affirmative duty, either contractually or statutorily, to provide an explanation of uninsured motorist coverage to insureds as an indispensable precondition for securing a statutorily effective rejection of uninsured motorist coverage. Although § 3636 of title 36 [12] has undergone some cosmetic amendatory changes since *Silver* was promulgated, both the statutory scheme and the rejection form signed by the Silver insureds are substantially similar to the current statute and the forms executed by the Spears.

¶ 19 The insurer's duty to give detailed pre-contract information concerning UM/UIM coverage to its insureds was considered again in *Cofer*. The opinion recognizes that, where the sufficiency of an insurer's offer of basic uninsured motorist cover is raised, the insurer has no contractual duty to explain the terms of its tender or to list the advantages and disadvantages of providing UM/UIM coverage.[13] Pursuant to the teachings of *Silver* and *Cofer*, and, under the facts presented, an insurance company need not provide insureds with pre-policy notice that stacking of UM/UIM is prohibited by the insurance contact to avoid multiple coverage recovery. To the extend that *Kinder v. Oklahoma Farmers Union Mutual Ins. Co. (Kinder I)*, 1991 OK CIV APP 53, 813 P.2d 546 and *Mid–Continent Group v. Henry*, 2003 OK CIV APP 46, ¶ 10, 69 P.3d 1216 are in conflict, they are expressly overruled.

## CONCLUSION

¶ 20 The underlying rationale for allowing an insured to benefit from all of the coverage

---

10. We specifically recognized in *Withrow v. Pickard*, see note 6, supra, that *Kinder v. Oklahoma Farmers Union Mutual Ins. Co. (Kinder I)*, 1991 OK CIV APP 53, 813 P.2d 546 had no precedential value.

11. The insureds cite to no other case, and research reveals no authority, promulgated by this Court or in any other jurisdiction which requires the pre-policy notice argued for here. See, generally, "Combining or 'Stacking' Uninsured Motorist Coverages Provided in Separate Policies Issued by Same Insurer to Same Insured", 25 A.L.R.4th 6 (1983); "Combining or 'Stacking' Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of

Individual Insured", 23 A.L.R.4th 12 (1983); "Construction of Statutory Provision Governing Rejection or Waiver of Uninsured Motorist Coverage", 55 A.L.R.3d 216 (1974).

12. Title 36 O.S. Supp.2004 § 3636, see note 2, supra.

13. *Withrow v. Pickard*, see note 6, supra. See also, *Prideaux v. Allstate Ins. Co.*, 1987 OK CIV APP 72, ¶ 6, 753 P.2d 935 [All information required to adequately inform insured of UM/UIM coverage and restrictions is found within the statutory language of 36 O.S. Supp.2004 § 3636, see note 2, supra.].

for which the party has paid premiums is to enforce the contractual expectations of the party purchasing the policies.[14] An insured, when allowed to stack UM/UIM coverage which has been paid for on a per-vehicle basis,[15] receives the benefit of the bargain for which there has been payment.[16] Likewise, insurers who have collected only one premium for multi-vehicle UM/UIM coverage should not be required to provide benefits for which they have not been compensated.

¶ 21 Both *Silver v. Slusher,* 1988 OK 53, 770 P.2d 878, *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989) and *Cofer v. Morton,* 1989 OK 159, 784 P.2d 67 teach that this Court will not engraft notice requirements on insurers regarding UM/UIM coverage not required specifically by legislative mandate. Pursuant to these opinions and under the facts presented, where the UM/UIM coverage form provided to the insured conforms with the requirements of 36 O.S. Supp.2004 § 3636,[17] the policy is renewed annually over a ten-year period with the insured being provided coverage summaries at each renewal, a single premium is charged for multiple vehicles having UM/UIM coverage, and policy language provides that liability for UM/UIM coverage is limited to the maximum amount payable for all damages regardless of the number of vehicles insured, an insurance company need not provide insureds with pre-policy notice that stacking of UM/UIM coverage is prohibited.

**QUESTION ANSWERED.**

**ALL JUSTICES CONCUR.**

---

14. *Rogers v. Goad,* 1987 OK 59, ¶ 5, 739 P.2d 519; *Richardson v. Allstate Ins. Co.,* see note 8, supra.

15. *State Farm Mutual Auto. Ins. Co. v. Wendt,* 1985 OK 75, ¶ 19, 708 P.2d 581; *Keel v. MFA Ins. Co.,* see note 8, supra.

16. *Babcock v. Adkins,* 1984 OK 84, ¶ 13, 695 P.2d 1340.

17. Title 36 O.S. Supp.2004 § 3636, see note 2, supra.